**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vincent Neal KING (90–5441) and Steve Wilbur Brooks (90–5442),
Defendants–Appellants.**

**Nos. 90–5441, 90–5442.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 13, 1990.

Decided Oct. 2, 1990.

**270**

John W. Gill, Jr., U.S. Atty., David Dake, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Knoxville, Tenn., for U.S.

Anthony Philip Lomonaco (argued), Vaughan & Zuker, Knoxville, Tenn., for Vincent Neal King.

James W. Bell (argued), Knoxville, Tenn., for Steve Wilbur Brooks.

Before: MARTIN and WELLFORD, Circuit Judges; and SILER, Chief District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Defendants, Vincent Neal King and Steve Wilbur Brooks, appeal the district court's application of the sentencing guidelines following their guilty pleas to entering a federally insured bank with the intent to commit larceny, in violation of 18 U.S.C. § 2113(a).

On August 27, 1989, King and Brooks entered a building adjoining the Bank of Roane County in Harriman, Tennessee through an open window. Once inside, they passed through several doors and eventually entered an unlocked door leading into the main lobby of the bank. Once inside the bank, King and Brooks rummaged through several of the bank employees' desks and took various items of personal property. They also rummaged through some of the teller cages and attempted to open the main vault. While attempting to turn the vault mechanism, they broke a cog in the vault door but did not mangage to enter the vault.

At some point, King and Brooks activated a surveillance camera in the bank and a silent alarm. Local police responded to the alarm at 6:30 a.m. They found King and Brooks on the second floor of the adjoining building lying on the floor with their eyes closed. Brooks was lying on his side with a set of nunchucks, a martial arts weapon, under his head. Both men possessed personal property belonging to bank employees. It was obvious to the officers that the defendants had been drinking.

On October 3, 1989, King and Brooks were indicted by a federal grand jury on

---

[*] The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

one count of entering a federally insured bank with the intent to commit larceny, in violation of 18 U.S.C. § 2113(a). They were arrested on October 16, 1989 and at their October 20, 1989 arraignment they entered pleas of not guilty. Subsequently, they both pled guilty to the single count in the indictment.

Following their pleas, a presentence report for both defendants was prepared by the probation officer. The officer, using Guidelines § 2B2.2, arrived at a base offense level of 12. Both defendants received a two-level upward adjustment for Brooks's possession of the set of nunchucks, which was classified as a dangerous weapon. The weapon adjustment for King was made pursuant to Guidelines § 1B1.3, Commentary, Application Note 3. King and Brooks received an additional one-level upward adjustment because the loss to the bank exceeded $2,500. The loss amount reflects $2,155.00 to repair the vault and $640.00 to develop the surveillance camera film and hire extra security guards while the vault was under repair. Both defendants received a two-level downward adjustment for their acceptance of responsibility. The resulting offense level for both defendants was 13. Level 13 requires penitentiary confinement rather than a lesser degree of supervision. The criminal history category for both defendants was I. Thus, the sentencing guideline range was 12 to 18 months.

The defendants filed written objections to the report, and the United States filed a written response to these objections. Specifically, Brooks and King challenged the inclusion of the cost of hiring security guards in the calculation of the bank's total loss. King also challenged the addition of two levels to his total based on Brooks's possession of the nunchucks. A sentencing hearing for both defendants was held on March 19, 1990. The district court adopted all of the recommendations made by the probation officer and sentenced both defendants to twelve months in prison, the lowest end of the guideline range. From these sentence determinations, both defendants appeal.

Both Brooks and King contend that the inclusion of $640.00 for film developing and hiring of security guards in the calculation of the loss suffered by the bank was a legal error and resulted in an improper one-level increase in their base offense level.

The sentencing guidelines for burglary provide:

§ 2B2.2. *Burglary of Other Structures*

(a) Base Offense Level: 12

(b) Specific Offense Characteristics

(1) If the offense involved more than minimal planning, increase by 2 levels.

(2) If the loss exceeded $2,500, increase by the corresponding number of levels from the table in § 2B2.1.

(3) If obtaining a firearm, destructive device, or controlled substance was an object of the offense, increase by 1 level.

(4) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

*Commentary*

*Statutory Provisions: 18 U.S.C. §§ 2113(a), 2115, 2117, 2118(b).*

*Application Notes:*

*1. "More than minimal planning" and "firearm" are defined in the Commentary to § 1B1.1 (Application Instructions). "Destructive device" is defined in the Commentary to § 2K1.4 (Arson; Property Damage by Use of Explosives).*

*2. Obtaining a weapon or controlled substance is to be presumed to be an object of the offense if such an item was in fact taken.*

*3. Valuation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement and Other Forms of Theft).*

*4. Subsection (b)(4) does not apply to possession of a dangerous weapon (including a firearm) that was stolen during the course of the offense.*

*Background: The offense level for burglary is significantly higher than that for theft for low losses, but is approxi-*

*mately the same for very high losses. Weapon possession, but not use, is a specific offense characteristic because use of a weapon (including to threaten) ordinarily would make the offense robbery. Weapon use would be a ground for upward departure.*

As stated in the Commentary to § 2B2.2, loss is to be determined according to the Commentary to § 2B1.1, in pertinent part, which provides that:

2. *"Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. When the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim. When property is damaged, the loss is the cost of repairs, not to exceed the loss had the property been destroyed. In cases of partially completed conduct, the loss is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy). E.g., in the case of the theft of a government check or money order, loss refers to the loss that would have occurred if the check or money order had been cashed. Similarly, if a defendant is apprehended in the process of taking a vehicle, the loss refers to the value of the vehicle even if the vehicle is recovered immediately.*

3. *The loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation.*

■ The question before us is whether "loss" includes more than repair or replacement costs, i.e., incidental or consequential damages. Here, the inclusion of the cost of hiring security guards during the repair of the vault door in the calculation of "loss" would result in the total damages exceeding $2,500.00 and a consequent one-level increase in the offense level. *See*

Guidelines § 2B2.2(b)(2) (incorporating loss/increase level table in Guideline § 2B2.1(b)(2)).

A fair reading of the Commentary to Guidelines § 2B1.1 demonstrates that "cost of repair" to a damaged bank vault would include reasonable costs of increased security pending the completion of the repair to the vault door. Although the guards obviously are not part of the broken door, it is wholly foreseeable that demolition to bank vaults or mechanical mishaps during an attempted burglary would result in increased security while the integrity of the bank vault is restored. Destruction of a bank vault falls within the concept of the Commentary to § 2B1.1 which provides that where the fair market value of destroyed property is difficult to ascertain or inadequate to measure harm, the court may measure loss in some other way. Guidelines § 2B1.1, Commentary, Application Note 2. Here, the "harm" exceeds the physical damage to the bank; the harm also includes the increased vulnerability of the assets in the vault while it is being repaired. Consequently, the district court properly adopted the probation officer's upward adjustment recommendation because the loss exceeded $2,500.00.

■ Defendant King challenges the attribution of Brooks's possession of the nunchucks to him and the consequent two-level increase in his base offense level. King argues that while Guidelines § 2B2.2 provides for a two-level increase in a defendant's base offense level if a defendant *possesses* a dangerous weapon, here, as opposed to Brooks, he did not possess the nunchucks. To increase the offense level for King, he contends, the adjustment must be made under Guidelines § 1B1.1, the relevant conduct provision of the guidelines. Under that provision, King would be "otherwise accountable" for Brooks's possession of the weapon only if that action was "in furtherance of the execution of the jointly undertaken criminal activity." Commentary to § 1B1.3. King contends that there is no evidence that the nunchucks were possessed during the entry of the bank and therefore, they should not be

attributed to him for the purposes of determining his offense level.

Conduct of others for which a defendant may be held accountable must bear a relationship to the crime of conviction, i.e., that conduct must be in furtherance of the crime and reasonably foreseeable. *See United States v. Willis*, 899 F.2d 873 (9th Cir.1990). Here, we deal with concerted activity. There is no explanation by either defendant as to how the nunchucks ended up under Brooks's head when the police arrived. The weapon was found in Brooks's possession at the time of the offense. The district court found that possession of a weapon in the commission of an entry into a federally insured bank was foreseeable and that it was reasonable to infer that King had knowledge of the weapon. That is a factual finding and we rule that the district court's determinations are not clearly erroneous. *See* 18 U.S.C. § 3742(e); *United States v. Hanley*, 906 F.2d 1116 (6th Cir.1990).

Consequently, we affirm the district court's sentencing determinations.