UNITED STATES of America, Plaintiff–Appellee,

v.

Owen G. MARLATT, Defendant–Appellant.

No. 93–3855.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1994.

Decided May 20, 1994.

Grant C. Johnson, Asst. U.S. Atty., Cheryl Schacht, Asst. U.S. Atty. (argued), Madison, WI, for U.S.

Dean A. Strang, Shellow, Shellow & Glynn, Milwaukee, WI (argued), for Owen G. Marlatt.

Before POSNER, Chief Judge, and ESCHBACH and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The defendant pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of making false statements to the Department of Labor in violation of 18 U.S.C. § 1027 and was sentenced to 33 months in prison, the top of the guidelines range that the judge thought applicable. The appeal argues that the judge picked too high a range, because she calculated the loss caused by the two offenses to be greater than $800,000; had she calculated it to be less than that amount the applicable range would have been lower and the defendant would have received a maximum sentence of only 30 months unless the judge departed upward. See U.S.S.G. § 2F1.1(b)(1)(L). The false-statement count caused a loss of $272,000; this the defendant concedes. But he argues that the fraud count caused a loss of only $476,000, bringing the total below the $800,000 benchmark.

█ The defendant, owner of a title company in northern Wisconsin which sold title insurance written by Ticor Title Insurance Company, bought a resort hotel at a foreclosure sale with the idea of selling time-shared condominium units in it. He sold the units and through his title company issued to each purchaser a title insurance policy written by Ticor. Each policy represented that the purchaser was obtaining clear title. The defendant knew, but didn't tell either the purchasers or Ticor, that actually the titles were heavily encumbered by liens for unpaid taxes, judgments, and mortgages. Eventually Ticor discovered what had happened and spent $476,000 to eliminate the liens and thus clear the titles. Meanwhile the value of the property had plummeted because the defendant had closed the resort. The purchasers of the units threatened to sue Ticor for fraud. To avert such a suit Ticor decided to buy all the units from the purchasers at the price at which the purchasers had bought them from the defendant. This was done at a cost of $565,000 which the judge added to the $476,000 to compute the total loss caused by the fraud. We must decide whether that additional $565,000 was "loss" within the meaning of U.S.S.G. § 2F1.1, the guideline for fraud.

Application Note 7 to this guideline defines "loss" as "the value of the money, property, or services unlawfully taken." Clearly, the defendant unlawfully took from Ticor the promise of indemnification contained in the policies of title insurance that Ticor through the defendant issued to the purchasers of the time-share condominiums. The promise, however, was not a promise to buy back the condominiums should the title prove defective; it was a promise to make the purchas-

ers whole (up to the policy limits) for any defects in the title. It was like a policy of fire insurance. The insurer does not promise to buy the insured's home if it is damaged by fire. He promises to make good the fire damage. Ticor made good the damage caused by the title defects by removing the defects. It paid off the various liens at a cost of $476,000 and having done so had done all that it had promised to do in the insurance policies that it had issued.

■ The purchasers were not happy. The resort had closed, and for this and perhaps other reasons their condos were worthless, however spic and span the titles to them. The purchasers had sustained a loss; Ticor had a deep pocket; Ticor's agent had committed a fraud; the temptation to sue was therefore great. The loss was not a consequence of the fraud, however, other than in the sense, irrelevant here as we shall explain, of "but for" causality. Ticor had made good the only loss caused in a legal sense by the defendant's fraudulent concealment of the defects in the titles it had insured. We do not know the cause of the loss of which the purchasers complained. It may have been a collapse of the local recreational real estate market, business mistakes by the defendant, some unrelated fraud by the defendant, or a completely extraneous event. All we know for sure is that the loss in value was not caused by the defective titles. For after the defects were removed, the loss remained. The fact that the purchasers would not have purchased the time shares had it not been for the title insurance policies issued by Ticor would not make Ticor an insurer against a drop in the real estate market. *Blackhawk Production Credit Ass'n v. Chicago Title Ins. Co.,* 144 Wis.2d 68, 423 N.W.2d 521, 525 (1988); *First Federal Savings & Loan Ass'n v. Transamerica Title Ins. Co.,* 19 F.3d 528 (10th Cir.1994); *Bastian v. Petren Resources Corp.,* 892 F.2d 680, 684–86 (7th Cir.1990); *Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc.,* 3 F.3d 208, 214 (7th Cir.1993); *McGonigle v. Combs,* 968 F.2d 810, 821–22 (9th Cir.1992); cf. *Allison v. Ticor Title Ins. Co.,* 907 F.2d 645, 651–52 (7th Cir.1990). That is the difference between "but for" causation and the causation—for which the presence of but-for cau-

sation is ordinarily a necessary condition but rarely a sufficient one—that imposes legal liability. The distinction runs throughout the law. Criminal law is no exception. A man rapes a woman and she is hospitalized. Her injuries are not serious but the hospital burns down and she dies. The rapist would not be responsible for the death, because the rape did not make it more likely that the victim would die as a result of a fire. The rape therefore did not, in either a legal or an ordinary-language sense, "cause" her death, though she would not have died in the hospital fire but for the rape. *Brackett v. Peters,* 11 F.3d 78, 79–80 (7th Cir.1993).

We are not suggesting that Ticor blundered in buying back the condos. Ticor is an insurance company, and insurance companies are regulated. It had a lot of angry customers on its hands. It decided to invest another half million dollars or so in fending off suits that however meritless might be costly to defend, might generate adverse publicity for the company, and might call down the wrath of insurance regulators. We have no reason to doubt the prudence of Ticor's expenditure. But that expenditure was not a loss caused by the defendant in the legal sense.

■ Even if it had been, it was not chargeable to the defendant under section 2F1.1 of the guidelines. Application Note 7(b) distinguishes between loss on the one hand and consequential and incidental damages on the other and makes clear that with irrelevant exceptions the latter two items are not to be counted in computing loss for purposes of sentencing under this guideline. The reason for the distinction is no doubt to prevent the sentencing hearing from turning into a tort or contract suit. The distinction is nicely illustrated by this case. The defendant extracted from Ticor by fraud a bunch of insurance policies on which Ticor was required to make good to the tune of $476,000. This was the loss. In the wake of the loss Ticor incurred other expenses, which were consequences, perhaps even foreseeable consequences, of the fraud, but were not the thing actually taken from Ticor, the loss; the thing taken was the promise to insure and

the cost of honoring that promise was $476,000. The distinction has been drawn in a number of other cases. *United States v. Newman,* 6 F.3d 623, 630 (9th Cir.1993); *United States v. Wilson,* 993 F.2d 214, 217 (11th Cir.1993); *United States v. Santiago,* 977 F.2d 517, 525–26 (10th Cir.1992).

The sentencing judge is not required to ignore the ramifications of a fraud. If they show that the defendant's offense was more serious than contemplated by the applicable guidelines, the judge can depart upward. See 18 U.S.C. § 3553(b) for the general principle, and U.S.S.G. § 2F1.1 Application Note 10 and *United States v. Wilson, supra,* 993 F.2d at 218, for its application to fraud cases in which the measured loss is contended to understate the gravity of the offense. What the judge is not permitted to do is to add consequential or incidental damages to the loss in determining which guidelines range is applicable. The case must therefore be returned to the district court for the resentencing of the defendant.

REVERSED AND REMANDED.