**UNITED STATES of America, Appellee,**

v.

**Lawrence R. GOTTFRIED, Appellant.**

No. 95–3016.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1995.

Decided June 27, 1995.

John H. Jamnback, Washington, DC, argued the cause, for appellant. With him on the briefs was Robert A. Boraks.

Laura L. Gansler, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the briefs were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Roy W. McLeese, III, and Suzanne G. Curt, Asst. U.S. Attys., Washington, DC.

Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.

Concurring opinion filed by Circuit Judge KAREN LeCRAFT HENDERSON.

RANDOLPH, Circuit Judge:

Lawrence R. Gottfried pled guilty to one count of unlawful concealment, removal, and mutilation of government records in violation of 18 U.S.C. § 2071. The district court sentenced him to fifteen months' imprisonment and ordered him to make restitution to the United States Treasury in the amount of $39,931.33. Gottfried's principal argument is that the district court, in applying the Sentencing Guidelines, miscalculated the "loss" his criminal conduct caused.

I

From 1971 until August 1994, Gottfried served as an Attorney Advisor to the Board of Veterans' Appeals in the Department of Veterans Affairs. The three-member Board decides veterans' appeals from determinations of the Department's regional offices denying disability benefits. The files in these cases typically contain the veterans' claims, medical and service records, and statements supporting the claims. Gottfried's job was to review the case file and prepare a draft decision for the Board granting or denying the appeal. If needed records were missing from the file, Gottfried would quickly dispose of the appeal by recommending a remand of the case to the regional office for further administrative action.

An investigation by the Department's Office of the Inspector General revealed that Gottfried systematically tampered with the files in order to reduce his workload. Rather than preparing a proposed merits decision for the Board, Gottfried removed documents from the case file, destroyed them, and then recommended that the case be sent back to

the regional office because the file was incomplete. From February 9, 1994, to May 10, 1994, the Inspector General copied thirty-eight veterans' appeals files before the cases were assigned to Gottfried. In thirty-two of the cases, Gottfried removed and destroyed medical records, service records and other documents, and, in each case, he recommended that the Board remand without deciding the merits of the appeal. Some of the missing documents were found among trash on the curb outside Gottfried's home and in his garage. Nearly all of the documents recovered had been torn, cut or mutilated in some fashion.

The Board began reprocessing all thirty-two of the cases in which Gottfried tampered with the files. In light of information indicating that Gottfried began tampering with case files as early as January 1990, the Board also began examining 1008 appeals Gottfried handled between then and the beginning of the Inspector General's investigation.

The main point of contention at sentencing dealt with the court's calculation of the "loss" attributable to Gottfried's offense. Destruction of government documents in violation of 18 U.S.C. § 2071 falls within the category of basic property offenses, such as larceny, embezzlement, and theft. For these offenses, § 2B1.3(b)(1) of the Guidelines (U.S.S.G.App. A (Nov. 1994)), requires the court to place a dollar amount on the victim's loss. As the amount of the loss increases, so does the corresponding increase in the base offense level. See U.S.S.G. § 2B1.1(b). The district court, finding the loss to be greater than $40,000 and less than $70,000, added 7 points to Gottfried's base offense level of 4.

The government placed its losses from Gottfried's malfeasance into four categories, which together totalled $123,764. The first category consisted of costs the Board incurred in reprocessing the thirty-two appeals. The government used $1,247.85 to represent the Board's "total cost per decision issue," a number the Board computes annually by dividing its total budget for processing veterans' appeals by the number of appeals. The government then multiplied $1,247.85 by thirty-two, representing the cases in which Gottfried had been caught removing and destroying documents. This resulted in a loss to the government of $39,931.

The second category allegedly dealt with Gottfried's "uncharged conduct." According to the government, the Board was incurring expenses in its effort to identify and reevaluate the 1008 additional appeals, between January 1, 1990, and February 9, 1994, in which Gottfried may have tampered with documents. Based on the salaries of the employees assigned to review those cases, and the cost of notifying the veterans, the Board's estimated losses amounted to $19,052.

The third and fourth categories were the Board's estimated administrative costs and expenses incurred during the period Gottfried was under investigation and the period after government agents confronted him with evidence of his conduct. The total estimated loss from categories three and four was $64,781.

The district court rejected the government's third and fourth categories. These were "investigative-type" expenses not properly considered losses suffered by the victim of the offense. The court accepted the government's other two calculations and thus concluded that the total loss resulting from Gottfried's conduct was $58,983, which increased Gottfried's base offense level by 7 points. The court added 2 points for "more than minimal planning" (U.S.S.G. § 2B1.3(b)(3)), plus 2 points for "abuse of a position of trust" (U.S.S.G. § 3B1.3), less 2 points for "acceptance of responsibility" (U.S.S.G. § 3E1.1(a)). Starting with a base offense level of 4 (U.S.S.G. § 2B1.3), Gottfried wound up with an offense level of 13, giving him a sentencing range of 12–18 months. The district court sentenced him to 15 months' imprisonment.

II

A

■ As to the district court's attributing $58,983 in losses to Gottfried, the commentary to § 2B1.1 states that the victim's "loss" will "[o]rdinarily" equal the fair market value of the property taken, damaged or destroyed. U.S.S.G. § 2B1.1, comment. (n. 2). From

this, Gottfried argues that the loss in this case must only be the nominal value of a few sheets of paper. That of course makes no sense. The purpose of the exercise is to measure the economic harm Gottfried caused. The greater the harm the greater the defendant's culpability, or at least that is the underlying theory. *See* U.S.S.G. § 2B1.1, comment. (backg'd). The commentary to § 2B1.1 contemplates cases such as the one before us. After talking about what "loss" ordinarily means, the authors continue: "Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way...." U.S.S.G. § 2B1.1, comment. (n. 2). To this the authors add that the loss "need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based upon the approximate number of victims and the average loss to each victim, or on more general factors such as the scope and duration of the offense." *Id.* comment. (n. 3).

In light of the commentary to § 2B1.1, the district court properly refused to use fair market value in measuring the loss. Whether the court used a permissible surrogate is the next issue.

## B

■ With respect to the loss of $39,931 for reprocessing the thirty-two cases, the parties assume, as did the district court, that the government was the "victim" of the crime.[1] Gottfried's objection is that the court included the Board's pro rata overhead expenses calculating the loss. The Board would have incurred these costs, he says, even if he had not broken the law. That may be true, but it does not render the calculation invalid. The Board delivers a service. It decides appeals from the regional offices. The Board, like Gottfried's counsel, cannot adequately perform that service without telephones, support staff, office space, heat, light, and so forth. When parties request attorneys' fees, over-

head expenses will be a component of the fees. We have recognized as much. *See Hirschey v. FERC,* 777 F.2d 1, 6 (D.C.Cir. 1985); *EEOC v. Strasburger, Price, Kelton, Martin & Unis,* 626 F.2d 1272, 1275–76 (5th Cir.1980). And so did the district court in this related context. Including pro rata overhead expenses in the amount of the Board's loss, or "fee," for reprocessing the thirty-two appeals merely attributed to Gottfried the cost of undoing the damage he had done.

We are not persuaded otherwise by the decisions holding that merely "incidental" or "consequential" damages may not be counted in computing "loss." *See United States v. Daddona,* 34 F.3d 163, 171–72 (3d Cir.) (applying U.S.S.G. § 2F1.1), *cert. denied,* —— U.S. ——, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994); *United States v. Marlatt,* 24 F.3d 1005, 1007–08 (7th Cir.1994) (applying U.S.S.G. § 2F1.1); *United States v. Newman,* 6 F.3d 623, 630 (9th Cir.1993) (applying U.S.S.G. § 2B1.1); *United States v. Wilson,* 993 F.2d 214, 217 (11th Cir.1993) (applying U.S.S.G. §§ 2F1.1, 2B1.1); *but see United States v. King,* 915 F.2d 269, 271–72 (6th Cir.1990) (applying U.S.S.G. § 2B1.1). *Daddona* held that defendants' unauthorized issuance of performance and payment bonds on a construction project defrauded the insurer and caused losses to it and perhaps to subcontractors who had unsatisfied claims, but the "loss" under the Guidelines did not also include the costs of completing the project. *Marlatt* held that the proper measure of loss was only the cost of clearing titles to property the defendant had falsely represented to purchasers as lien-free, not the cost to the title company of buying the properties from the disgruntled purchasers. *Newman* held that the loss caused by the defendant arsonist was only the value of the property destroyed by the fire, not the costs of putting the fire out. *Wilson* held that the loss consisted only of the fees the defendant fraudulently took from would-be borrowers, not the

1. But what of the veterans whose appeals were delayed by Gottfried's actions? *See* U.S.S.G. § 2B1.1, comment. (n. 3). Any of those veterans who would have prevailed on appeal suffered losses, if only because of the delay caused by

Gottfried's criminal conduct. Calculating the amount of their losses is another matter. *Cf.* U.S.S.G. § 2B1.1, comment. (n. 2). We express no view on the matter since neither the district court nor the government made the attempt.

amount of loans the defendant falsely promised to obtain for his victims. Perhaps more may be discerned, but at the least the cases stand for the general proposition that only "direct" losses count. The loss of $39,931 fits that description. The costs of redoing the thirty-two appeals Gottfried had been assigned to handle was a direct result of his crime. It followed immediately as a consequence of his unlawful action. If Gottfried had not violated the law, the appeals would have been handled once, by him. His illegal initial processing of the appeals forced the Board to reprocess them. *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), a case the government cites, resembles this one. The defendant there illegally removed and destroyed government documents intended to be used to prosecute him for tax fraud. Because the market value of the stolen documents did not adequately reflect the harm to the government, the court of appeals held that it was proper to equate the loss to the costs associated with undoing the full extent of the damage—including the costs of "reorganizing the documents," "reinterviewing witnesses," and "obtaining" and "recopying" replacement documents. 927 F.2d at 1390. So here. The time and resources spent reprocessing the appeals Gottfried sought to derail could have been devoted to processing new ones. It is entirely proper to factor in such opportunity costs. *See Berkowitz*, 927 F.2d at 1390.

### C

■ As to the loss relating to the alleged "uncharged conduct" involving the 1008 cases, § 1B1.3(a)(2) of the Sentencing Guidelines requires the district court to determine the offense level on the basis of uncharged conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction." The government must prove by a preponderance of the evidence that the defendant committed such relevant conduct. *United States v. Salmon*, 948 F.2d 776, 778–79 (D.C.Cir.1991); *see also* U.S.S.G. § 6A1.3. That the government did not carry its burden for all 1008 appeals Gottfried handled between January 1990 and

February 1994 is quite clear, but, as it turns out, of no consequence. It also does not matter whether, as Gottfried argues, the government's costs of "identifying" those cases in which he destroyed documents are incidental and thus not properly counted for sentencing purposes.

The district court could consider "any information" tending to show that Gottfried removed and destroyed documents, so long as that information had "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3, comment. (citations omitted). The government submitted a sworn declaration of Leo William Tobin, Gottfried's former supervisor, who "clearly recall[ed]" an appeal in June 1990, in which Gottfried removed documents from the case file. Gottfried had presented a draft decision, along with the case file, to Tobin's supervisor for review. Tobin's supervisor reviewed the draft, and gave it and the case file back to Gottfried for additional work. When Gottfried later returned the file, documents were missing. As to this one case, there was ample evidentiary support for the court's finding that Gottfried tampered with the documents. *See* 18 U.S.C. § 3742(d); *United States v. Kim*, 23 F.3d 513, 517 (D.C.Cir. 1994). Gottfried's own written statement to his probation officer corroborated Tobin's account.

The Board's standard processing cost of $1,247.85 for this one case, plus the $39,931 for the other 32 cases, adds up to more than $40,000. Since the district court added 7 points to Gottfried's base offense level because the loss was greater than $40,000 and not more than $70,000, *see* § 2B1.1(b), any errors the court might have committed in computing an even greater loss would have had no effect on Gottfried's offense level.

### D

■ Of the other alleged errors Gottfried identifies, only one warrants discussion. The district court increased Gottfried's base offense level by 2 points for "more than minimal planning" (U.S.S.G. § 2B1.3(b)(3)), and 2 more points for "abuse of a position of trust" (U.S.S.G. § 3B1.3). According to

Gottfried, invoking both enhancement provisions penalized him twice for the same conduct. The law of this circuit is that when two enhancement provisions of the Guidelines involve separate elements, a defendant's base offense level may be increased by both if the government proves the elements by a preponderance of the evidence. *United States v. Hunt*, 25 F.3d 1092, 1098 (D.C.Cir. 1994); *accord United States v. Marsh*, 955 F.2d 170, 171 (2d Cir.1992), and cases there cited. The decisions Gottfried invokes, *United States v. Chichy*, 1 F.3d 1501, 1507 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993); *United States v. Werlinger*, 894 F.2d 1015, 1017 (8th Cir. 1990); *United States v. Romano*, 970 F.2d 164, 167 (6th Cir.1992), are to the same effect. In *Chichy* and in *Romano*, the Sixth Circuit ruled that a defendant's offense level for conspiring to defraud the United States could not be increased for both his role as an organizer of the criminal activity (U.S.S.G. § 3B1.1) and his extensive planning of the offense (U.S.S.G. § 2F1.1(b)(2)). Those who are organizers necessarily do more than minimal planning. In *Werlinger*, the Eighth Circuit held that an embezzler's last-minute attempt to falsify bank records before a surprise cash audit could not support an enhancement for both obstructing an investigation (U.S.S.G. § 3C1.1) and more than minimal planning (U.S.S.G. § 2B1.1(b)(5)). The requisite amount of planning exists when the defendant takes "significant affirmative steps" to conceal his offense (U.S.S.G. § 1B1.1, comment. (n. 1(f))), steps that necessarily obstruct investigations.

As to the government's proof in this case, there is no doubt that Gottfried's crime involved significant planning. "More than minimal planning" is present, the Guidelines tell us, "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, comment. (n. 1(f)). In thirty-two cases over a three-month period Gottfried removed and destroyed documents from the Board's files. He made his selections carefully, plucking out and mutilating those papers needed for the appeals to go forward. There is also no doubt that Gottfried held a position of public trust and abused it. His job was to provide legal advice to the Board on the merits of the veterans' appeals assigned to him. Rather than giving the Board his best judgment on the cases, he manipulated the files to his advantage, attempting to mislead the Board into thinking the cases had to be remanded.

With respect to Gottfried's offense, the abuse-of-trust provision and the minimal-planning provision entailed separate elements. It does not follow that because an individual holds a position of trust, he necessarily must engage in more than minimal planning when he violates 18 U.S.C. § 2071 by willfully removing or destroying documents filed in a public office. *Contrast United States v. Werlinger*, 894 F.2d at 1016. If Gottfried, in a fit of frustration over his workload, had burned one of the case files assigned to him, the minimal-planning enhancement doubtless would not have applied. And a person does not necessarily have to hold a position of trust to violate 18 U.S.C. § 2071 with more than minimal planning. If the night janitor had willfully destroyed documents from a Board case file, he too would have been guilty; if the janitor systematically tampered with case files in order to prevent veterans from receiving disability benefits, he would deserve a planning enhancement but not an additional boost for abusing the sort of position Gottfried held.

*Affirmed.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

I fully agree with the majority opinion. Because the property loss valuation provisions of the Guidelines are a bad fit for the kind of crime committed here (in that they focus on the value of the property taken or damaged rather than the extent of actual harm caused by the criminal activity), however, I write to point out an alternative approach. The Guidelines provide for an upward departure where "the monetary value of the property damaged or destroyed may not adequately reflect the extent of the harm caused." *See United States Sentencing Guidelines* § 2B1.3 application note 4. Of particular relevance here, the Guidelines also provide that "[i]f the defendant's conduct resulted in a significant disruption of a govern-

mental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected." *Id.* § 5K2.7.