**UNITED STATES of America, Appellee,**

v.

**Pauline Ngo BAPACK, Appellant.**

No. 96–3172.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct 7, 1997.

Decided Dec. 5, 1997.

■■■■■■■■■■■■■■■■■■■■■■■

Evelina J. Norwinski, Assistant Federal Public Defender, Washington, DC, argued the cause for the appellant. A.J. Kramer, Federal Public Defender, was on brief.

Darryl Blane Brooks, Assistant United States Attorney, Washington, DC, argued the cause for the appellee. Mary Lou Leary, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Virginia Cheatham, Assistant United States Attorneys, were on brief.

Before: WALD, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

A jury convicted appellant Pauline Ngo Bapack of conspiring to defraud the Government (18 U.S.C. § 286), submitting false Medicare and Medicaid claims for payment (18 U.S.C. § 287), mail fraud (18 U.S.C. § 1341) and/or aiding and abetting (18 U.S.C. § 2) these offenses. She was sentenced to twenty-seven months' imprisonment and three years' supervised release and was ordered to pay $100,506.00 in restitution, reduced by approximately $38,000 based on the amount recovered in civil forfeiture proceedings. She now appeals her sentence, claiming that it was improperly enhanced under sections 2F1.1(b)(2)(A) (more than minimal planning) and 3B1.1(c) (aggravating role) of the United States Sentencing Guidelines (Guidelines) and that she was erroneously ordered to pay restitution without regard to her ability to pay.[1] We affirm.

## I. BACKGROUND

Bapack was the co-owner of Urgent Home Health Care Services, Inc. (Corporation), which provided nursing care to Medicaid and Medicare patients in their homes. She was responsible for billing Medicaid for the services the Corporation provided. Because Medicaid and Medicare pay only for services actually rendered, a home health care agency like the Corporation simply cannot bill for the services prescribed in the patient's Plan of Care (Plan). Instead the provider can bill Medicaid and Medicare only for the number and kinds of treatment visits in fact made, which, for a variety of reasons, may differ from those prescribed in the patient's Plan. Thus, the provider typically generates billing invoices by reference to attending nurses' time sheets, treatment notes and other records.

The Corporation, however, did not do this. Instead, at Bapack's (and co-defendant Pierre Yopa's) direction, it billed Medicaid and Medicare for the number and type of visits prescribed in the patient's Plan. As a result, it remitted numerous invoices for services it did not perform; the evidence presented at trial established that the Corporation, under the superintendence of Bapack and Yopa, billed Medicaid and Medicare for more than 1,400 nurse visits that could not be substantiated, the value of which totaled approximately $100,506.00.

On a tip from a former Corporation employee, the Inspector General's Office of the United States Department of Health and Human Services learned of the billing practices and raided the Corporation's offices in November 1995. After reviewing the records seized, and after subpoenaing several Corporation nurses to testify, the grand jury returned an eighteen-count indictment against Bapack and her codefendant, Pierre Yopa. Yopa was the other co-owner of the Corporation and he was responsible for Medicare billing.

---

1. Section 2F1.1(b)(2) of the Guidelines provides that "[i]f the offense involved (A) more than minimal planning, ... increase [the sentence] by 2 levels," and section 3B1.1(c) of the Guidelines states that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase [the sentence] by 2 levels." United States Sentencing Commission, *Guidelines Manual*, § 2F1.1(b)(2)(A) & § 3B1.1(c) (Nov. 1995).

The Government's evidence included the testimony of Diane Bouchaud, a nurse who had been a case manager for the Corporation. Bouchaud testified that Bapack directed her and other nurses to falsify records of nursing visits that were not made. *See* 9/10/96 Trial Tr. 325, 333–36, 338. Zuliatu Sillah, another nurse who served as the Corporation's Acting Director of Nursing, testified that Bapack had instructed her and others to fabricate records of nursing visits to assist in meeting a survey administered by the District of Columbia Department of Consumer and Regulatory Affairs (DCRA). *Id.* at 412–13, 418–19, 436–38. The Corporation was required to meet DCRA requirements, including complying with the surveys, to be a certified Medicare provider.

On September 16, 1996, the jury returned a general verdict, finding both Bapack and Yopa guilty on all counts. The district court sentenced Bapack on December 9, 1996. Concluding that her offenses involved "more than minimal planning," it enhanced her sentence by two levels pursuant to section 2F1.1(b)(2)(A) of the Guidelines. 12/9/96 Sentencing Tr. 20. The court also found that, under section 3B1.1(c) of the Guidelines, an additional two-level enhancement was appropriate for Bapack's role as an "organizer, leader, manager, or supervisor":

> Well, [appellant] clearly was, at the very least, a manager or supervisor. There was at least more than one participant other than Ms. Bapack herself. The testimony is that she was, in fact, a manager of the enterprise that was found guilty of defrauding Medicare.

*Id.* at 18. The presentence investigation report (Report), which the district court adopted in the Judgment in a Criminal Case (Judgment), also recited that "[f]ormer employees testified that Ms. Ngo Bapack, [sic] asked some of the staff members to create nursing records so that the patient's file would falsely reflect that nurses had followed the doctors' orders and reflect that the nurse

visits had been consistent with the 'Plans of Care.'" 11/20/96 Report ¶ 11.

Finally, the district court ordered Bapack to pay restitution:

> You shall pay a total restitution in the amount of $100,506.... The Court finds you do not possess the ability to pay a fine, the cost of imprisonment, or supervision unless otherwise determined by the Bureau of Prisons. In view of your financial status and your need to secure employment upon release to begin paying your restitution payments, an alternative sanction is not recommended.... Finally, I want to note for the record that there is a companion civil case that's running alongside this case. It's a forfeiture case.... And the effect of that forfeiture entered on the sentencing in this case is as follows: It doesn't affect the level of loss for purposes of the sentence. But I believe it will operate to reduce the amount of restitution that [co-defendant] and Ms. Bapack will have to make. And so the final orders will reflect a restitution amount which is the approximately hundred thousand dollars that I recited minus the approximately $38,000 that has been seized and forfeited. And also, for the record, that restitution amount will necessarily be joint and several for whatever effect that has if Mr. Yopa is ever apprehended and returned and sentenced.

12/9/96 Sentencing Tr. 22, 24 (reporter's indenting and paragraph structure omitted). The Report noted "[b]ased on her current financial status, it does not appear that [appellant] has the ability to pay a fine, the costs of incarceration and/or supervision, in addition to her restitution obligation, if ordered by the court." 11/20/96 Report ¶ 57. It also noted that "the Government reported that when the seizure warrant was executed on March 4, 1996, the defendant had a [bank] balance of $102,645.17."[2] *Id.* The district court then ordered Bapack to pay restitution

---

2. The Government's sentencing memorandum indicated that this amount was held in two Crestar Bank accounts. (Appellee App. Tab H at 10 n.4.) Neither the sentencing memorandum nor the Report indicates, however, whether and to

what extent Bapack (as distinguished from her co-defendant) had access to the accounts. Moreover, there is no record indication that the district court relied on this information in ordering restitution.

in the amount of $62,294.50.[3] Bapack contested neither the restitution order nor the enhancement for more than minimal planning. She did argue, however, that there was insufficient evidence to support the aggravating role enhancement. 12/9/96 Sentencing Tr. 12–13. Bapack timely appealed and we now affirm.

## II. DISCUSSION

### A. Aggravating Role Enhancement

[1] Bapack first contends that because there was no evidence to establish her role as a supervisor or manager of another participant in the crimes with which she was charged, the district court erred in enhancing her sentence pursuant to section 3B1.1(c) of the Guidelines. We review the sentencing court's finding for clear error.[4] *See United States v. Baylor*, 97 F.3d 542, 548 (D.C.Cir. 1996); *United States v. Kelley*, 36 F.3d 1118, 1128 (D.C.Cir.1994) ("[W]e give due deference to the district court's application of the sentencing guidelines to the facts, and we accept the district court's findings of fact unless they are clearly erroneous.").

At sentencing, it is the Government's burden to demonstrate by a fair preponderance of the evidence that an enhancement is warranted. *See United States v. Cruz*, 120 F.3d 1, 2 (1st Cir.1997) (en banc).

Thus, to support an aggravating role enhancement, the Government must show that more likely than not the defendant organized, led, managed or supervised the crime. *See* United States Sentencing Commission, *Guidelines Manual*, § 3B1.1 application note 2 [hereinafter *Guidelines Manual*].[5] The Guidelines direct the sentencing judge to consider several factors, including

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* application note 4; *accord United States v. Thomas*, 114 F.3d 228, 261 (D.C.Cir.1997) ("The Sentencing Guidelines instruct the sentencing court to consider the numerous factors listed above, *no one of which is determinative.*") (emphasis added), *cert.denied,* — U.S. ——, 118 S.Ct. 635, —— L.Ed.2d —— (1997).

Mere "control over a scheme rather than over a *participant* in a scheme," however, does not warrant a sentencing adjustment pursuant to section 3B1.1(c).[6] *United States*

---

3. Bapack's Judgment orders restitution in the amount of $72,294.50, which is $10,000.00 more than the district court's *oral* sentence. The Government attributes the difference to a simple arithmetic error: the amount of loss, $100,506.00, less the amount recovered in forfeiture proceedings, $38,211.50, should have resulted in a restitution order in the amount of $62,294.50, not $72,294.50. It suggests that we let the district court resolve the matter without remand (pursuant to Fed.R.Crim.P. 36) and without delaying consideration of the merits. *See* Appellee Br. at 25 n.14. We think the preferable procedure is to conform the written sentence to the oral one. *See Bartone v. United States*, 375 U.S. 52, 53, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963) ("This error, in enlarging the sentence in the absence of petitioner, was so plain in light of the requirements of Rule 43 that it should have been dealt with by the Court of Appeals, even though it had not been alleged as error."). Accordingly, we hereby conform the written and oral restitution orders, revising the Judgment to require restitution of $62,294.50, the amount the district court plainly intended to order.

4. While she also asserts the district court applied the wrong legal standard (Appellant Br. 8), we find nothing in the sentencing transcript to support her assertion.

5. The Commentary to the Guidelines binds the sentencing court to the same extent as the Guidelines themselves. *See Stinson v. United States*, 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

6. The Commentary recites that "[a]n upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." *Guidelines Manual*, § 3B1.1 application note 2. Because the district court indicated that it was adjusting Bapack's sentence, rather than upwardly departing, however, we cannot affirm the sentence on the basis of her evident role in exercising "management responsibility over the property, assets, or activities of" the Corporation. *See United States v. Jobe*, 101 F.3d 1046, 1048 (5th Cir.1996) ("As the

*v. Gort–DiDonato,* 109 F.3d 318, 322 (6th Cir.1997) (emphasis added). Instead "the defendant must have been the organizer, leader, manager, or supervisor of one or more *participants.*" *Guidelines Manual,* § 3B1.1 application note 2 (emphasis added). A "participant" is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* application note 1. In turn, a person is "criminally responsible" if he "commit[s] all of the elements of a statutory crime with the requisite *mens rea.*" *United States v. Badaracco,* 954 F.2d 928, 934–35 (3d Cir.1992). This does not mean, however, that to qualify as a "participant" a person must be found criminally responsible as a principal or culpable in the same crime of which the supervising defendant was convicted: "[J]ust as a party who knowingly assists a criminal enterprise is criminally responsible under principles of accessory liability, a party who gives knowing aid in some part of the criminal enterprise is a 'criminally responsible party' under the Guidelines." *United States v. Hall,* 101 F.3d 1174, 1178 (7th Cir.1996). Thus, "the facts that none of [the participants] benefitted from the commission of the offense or were convicted of any offenses arising from the criminal activity do not necessarily determine the ultimate issue."

*United States v. Braun,* 60 F.3d 451, 453 (8th Cir.1995).

■ Bapack argues that none of the nurses who falsified treatment records and time sheets at her instruction can be considered criminally responsible for the crimes of which she was convicted because (1) none of the nurses was involved in the billing and (2) the falsified records were not used to bill Medicaid or Medicare but instead were used only to meet the DCRA certification survey. In her view, therefore, none of the supervised nurses had "the specific intent to facilitate Medicare/Medicaid fraud." (Appellant Reply Br. 3.) In short, Bapack asserts that, to the extent the nurses she supervised contributed to the offenses of which she was ultimately convicted, they did so unwittingly.[7]

Her contentions are beside the point as they are mistakenly predicated on the assumption that only supervision of "participants" in the crimes with which she was *charged,* or of which she was *convicted,* warrants a section 3B1.1(c) enhancement. To the contrary, as provided by the Guidelines as well as circuit precedent, "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 ... and *not solely on the basis of elements and acts cited in the count of conviction.*"[8] *Guidelines Manual,*

---

district court did not order an upward departure, this ground of enhancement is unavailable to sustain the enhancement on appeal."), *cert. denied —* U.S. *—,* 118 S.Ct. 81, *—* L.Ed.2d *—* (1997); *but cf. United States v. Giraldo,* 111 F.3d 21, 24 (5th Cir.1997) (although sentencing judge improperly relied on asset management theory to *adjust* sentence instead of *upwardly departing,* court declined to vacate sentence because evidence also supported *adjustment* making Guidelines application error harmless).

**7.** She also argues that the only other "participant" in the charged crimes, her business partner and co-defendant Yopa, was not shown or even alleged to have been supervised, managed or led by her. Because we find sufficient evidence that Bapack supervised nurses in the commission of certain crimes with which both she and the involved nurses could have been charged, we do not reach the issue of Bapack's role vis-à-vis her co-defendant.

**8.** Section 1B1.3 defines "relevant conduct" as:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, pro-

cured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; (2) *solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;* (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and (4) any other information specified in the applicable guideline.

*Guidelines Manual,* § 1B1.3(a)(1)-(4) (emphasis added).

§ 3B1.1 introductory commentary (emphasis added); *accord United States v. Caballero,* 936 F.2d 1292, 1298 (D.C.Cir.1991) ("[W]e conclude that section 3B1 allows the sentencing judge to *look to the contours of the underlying scheme itself rather than the mere elements of the offense charged.*") (internal quotations omitted; emphasis added), *cert. denied,* 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992). Accordingly, the district court was free to consider Bapack's role with respect to all crimes, charged or otherwise, "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Guidelines Manual,* § 1B1.3(a)(2).[9] In other words, application of the section 3B1.1(c) enhancement does not require a finding that Bapack supervised "participants" who were unindicted co-conspirators or accessories in the crimes of which she was convicted. Rather, it is enough that the "participants" she supervised were culpably involved in uncharged crimes "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.*

We therefore have no trouble concluding that Bapack supervised or managed at least one other "participant." Specifically, the testimony of at least two Corporation nurses (Bouchaud and Sillah), as well as the representations made in the Report, establish by well more than a fair preponderance of the evidence that Bapack supervised the knowing creation of a materially false document.[10]

9. Section 1B1.3(a)(2) of the Guidelines applies because section 3D1.2(d) requires that Bapack's fraud and conspiracy convictions be grouped.

10. Indeed, Bouchaud's testimony was so suggestive of her criminal culpability it prompted defense counsel to inquire whether she had been granted immunity. *See* 9/10/96 Trial Tr. 336:11–338:16.

11. Section 1001, in relevant part, provides:
   [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willingly—... (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any material false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

Although the Government elected not to pursue it, the knowing falsification of records is a violation of 18 U.S.C. § 1001, for which both Bapack and the involved nurses could have been prosecuted.[11] The nurses' actions were indisputably "part of the same course of conduct or common scheme or plan as the offense[s]" of which Bapack was convicted. Although they *admitted* only that they falsified records for the DCRA certification requirements, a jury might reasonably disbelieve their knowledge was so limited and conclude from the totality of the circumstances that the nurses were well aware that the falsified records would ultimately be submitted to the Medicaid program.[12] Accordingly, the district court did not clearly err in finding Bapack played an aggravating role in the offenses.

## B. Cumulative Application of Sections 3B1.1(c) and 2F1.1(b)(2)(A)

■ Bapack next argues that by cumulatively enhancing her sentence for her managerial role and for more than minimal planning, the sentencing court punished her twice for the same conduct. Since Bapack did not raise the double-counting argument below, we review the district court's decision for plain error. *See United States v. Plunkett,* 125 F.3d 873, 874–75 (D.C.Cir.1997). The Guidelines provide:

   Absent an instruction to the contrary, the adjustments from different guideline sec-

18 U.S.C.A. § 1001(a) (West Supp.1997) (paragraph structure omitted). Bouchaud's testimony (*see supra* note 10) also suggested that she might have been prosecuted for submitting false claims in violation of 18 U.S.C. § 287, providing yet another basis for enhancing Bapack's sentence pursuant to section 3B1.1(c).

12. In any event, because DCRA acts as an agent for the United States Department of Health and Human Services (HHS) regarding D.C. Medicare certifications, 9/9/96 Trial Tr. 200–205, the DCRA survey itself may qualify as a "matter within the jurisdiction of the executive ... branch of the Government of the United States." *Cf. United States v. Murphy,* 935 F.2d 899, 900 n. 1 (7th Cir.1991) ("As we have previously held, HHS' regulatory oversight and provision of funding for Illinois' AFDC program establishes the applicability of § 1001 to that program.").

tions are applied cumulatively (added together). *For example, the adjustments from § 2F1.1(b)(2) (more than minimal planning) and § 3B1.1 (Aggravating Role) are applied cumulatively.*

*Guidelines Manual,* § 1B1.1 application note 4(¶ 2) (emphasis added). Nevertheless Bapack encourages us to set aside the enhancement for more than minimal planning, asserting that the holding in *United States v. Gottfried,* 58 F.3d 648, 653 (D.C.Cir.1995), supports her. We disagree. In *Gottfried,* we had to decide whether enhancements for more than minimal planning and for abuse of a position of trust were duplicative. *See* 58 F.3d at 652–53. We held that, because the two enhancements were based on separate elements of the defendant's offense, their cumulative application did not punish him twice for the same conduct. *Id.* at 653. In *Gottfried* we noted in *dicta* two Sixth Circuit cases "to the same effect." *Id.* Although those cases—*United States v. Chichy,* 1 F.3d 1501, 1507 (6th Cir.1993), and *United States v. Romano,* 970 F.2d 164, 167 (6th Cir.1992)—held that enhancements for an *organizing* role and for more than minimal planning could be impermissibly duplicative, they did not involve a situation in which a different element supported each enhancement. Bapack's case is plainly distinguishable from those cases because her sentence was enhanced for her *managerial/supervisory* role and for more than minimal planning. Moreover, as the Sixth Circuit has since acknowledged, both *Chichy* and *Romano* were overruled in 1993 when the Sentencing Commission amended the Commentary to section 1B1.1 to include the unequivocal language quoted above. *See United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996) ("The Sentencing Commission's regulations have thus abrogated the holdings of *Romano* and *Chichy.*"). [B]ecause "the force of the [Guidelines] commentary is near complete," *United States v. Smaw,* 22 F.3d 330, 333 (D.C.Cir.1994), we, like the Sixth Circuit,

think that Application Note 4 to section 1B1.1 of the Guidelines is dispositive.

The enhancements Bapack received were based on different elements of the offenses of which she was convicted. The aggravating role enhancement (as Bapack herself argues) was based on her directing nurses to falsify records of treatment visits that were not made whereas the more than minimal planning enhancement was based on the overarching fraudulent billing scheme Bapack and her co-defendant engineered. Thus, contrary to her contention, Bapack was not found to have engaged in more than minimal planning *because* she supervised or managed a "participant," nor was she found to have supervised or managed a "participant" *because* she engaged in more than minimal planning. Accordingly, the district court did not err, much less plainly err, in cumulatively applying sections 3B1.1(c) and 2F1.1(b)(2)(A) of the Guidelines to enhance Bapack's sentence.

## C. The Restitution Order

Finally Bapack contends that the district court erred in ordering restitution both because it apparently failed to consider her ability to pay and because the available evidence demonstrated that she could not make restitution.[13] Bapack specifically asserts that, as the Report indicates, she has four minor children living in Cameroon, her debts exceed her assets and she is subject to deportation proceedings upon release from federal custody. For these reasons, she asserts, the court erred in ordering restitution in any amount. Because Bapack did not contest the restitution order below, we review it for plain error. *See Plunkett,* 125 F.3d at 874–75; *United States v. Davis,* 117 F.3d 459, 462 (11th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997); *United States v. Zink,* 107 F.3d 716, 718 (9th Cir. 1997); *United States v. Castner,* 50 F.3d 1267, 1277 (4th Cir.1995).

**13.** Although the restitution provisions of Title 18, 18 U.S.C.A. §§ 3663 *et seq.* (West Supp.1997), have recently been amended to make restitution mandatory in cases like this one, we apply the provisions in effect at the time Bapack was sentenced. *See United States v. Thompson,* 113 F.3d 13, 15 n. 1 (2d Cir.1997) (concluding that retroactive application of mandatory restitution provisions raises *ex post facto* concerns).

■ The Guidelines direct that "[i]n determining whether to impose an order of restitution, and the amount of restitution, the court shall consider the amount of loss the victim suffered as a result of the offense, the financial resources of the defendant, the financial needs of the defendant and his dependents, and other factors the court deems appropriate." *Guidelines Manual*, § 5E1.1 background ¶ 3 (paraphrasing 18 U.S.C. § 3664(a)). The Guidelines do not, however, require a sentencing judge to make specific factual findings regarding the factors. On the contrary, they instruct that "[i]f the court does *not* order restitution *or* orders *only partial* restitution, it must state its reasons for doing so." *Id.* background ¶ 2.

As we have observed in the analogous context of assessing a defendant's ability to pay a fine, because

> [t]he guidelines set forth no requirement ... that the sentencing court make express findings on this question[,] ... we decline to create one. So long as the sentencing judge in fact considers ability to pay, he is in compliance with the guidelines' mandates. Thus, where the record demonstrates that the judge considered that factor before imposing the fine, the appellate court will not reverse the fine merely because no express finding was made but will review the finding of ability to pay necessarily implied by such consideration.

*United States v. Mastropierro*, 931 F.2d 905, 906 (D.C.Cir.1991). In applying this rule, we join the clear majority of our sister circuits. *See, e.g., Davis*, 117 F.3d at 463 (11th Cir. 1997) (noting that specific factual findings not required); *United States v. Sanders*, 95 F.3d 449, 456 (6th Cir.1996) (similar); *United States v. Giwah*, 84 F.3d 109, 114 (2d Cir. 1996) (similar); *United States v. Newman*, 49 F.3d 1, 10 (1st Cir.1995) (similar); *United States v. Gio*, 7 F.3d 1279, 1291 (7th Cir.1993) (similar); *United States v. Ramilo*, 986 F.2d 333, 335 (9th Cir.1993) (similar); *United States v. Rogat*, 924 F.2d 983, 986 (10th Cir.) (similar), *cert. denied*, 499 U.S. 982, 111 S.Ct.

1637, 113 L.Ed.2d 732 (1991); *United States v. Ryan*, 874 F.2d 1052, 1053 (5th Cir.) (concluding that legislative predecessor to 18 U.S.C. § 3664(a) did not require specific findings), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989).[14]

■ We conclude that the record adequately evinces the district court's consideration of Bapack's ability to pay, the only one of the required factors she challenges. In particular, we note that the court adopted the unchallenged ability-to-pay findings of the Report, which discussed Bapack's financial worth, past work history and future ability to pay. The judge also stated "[t]he Court finds you do not possess the ability to pay a fine, the cost of imprisonment, or supervision[;] ... [i]n view of your financial status and your need to secure employment upon release to begin paying your restitution payments, an alternative sanction [fines, etc.] is not recommended." 12/9/96 Sentencing Tr. 22. These indicia of the court's consideration of Bapack's ability to pay restitution satisfy us that it considered the required factors in ordering her to pay restitution. *See Davis*, 117 F.3d at 464 (record reflected consideration of defendant's ability to pay where sentencing judge adopted presentence report regarding defendant's financial circumstances and where defendant was given opportunity to object but did not); *Castner*, 50 F.3d at 1278 (sentencing judge's failure to make specific factual findings regarding defendant's ability to pay restitution was not plain error where judge adopted presentence report that considered 18 U.S.C. § 3664(a) factors); *United States v. Mizrachi*, 48 F.3d 651, 657 (2d Cir.1995) (upholding restitution order where presentence report contained detailed discussion of 18 U.S.C. § 3664(a) factors and where court mentioned restitution in connection with its decision not to assess fine or incarceration costs); *Nelson*, 5 F.3d at 258 (record reflected consideration of defendant's ability to pay restitution where sentencing judge determined "[d]efendant does not have a financial ability to pay a fine,

---

14. We therefore reject the approach of the Third Circuit and the Fourth Circuit, which seem to require specific findings as to each of the factors listed in 18 U.S.C. § 3664(a). *See United States*

*v. Copple*, 74 F.3d 479, 482 (3d Cir.1996); *United States v. Piche*, 981 F.2d 706, 718 (4th Cir.1992), *cert. denied*, 508 U.S. 916, 113 S.Ct. 2356, 124 L.Ed.2d 264 (1993).

costs of incarceration, community confinement, or supervision, and, therefore, [the court] waives the interests on the fine, costs of incarceration, community confinement and supervision in this case").

The cases Bapack relies on are easily distinguished from hers. In *Thompson,* 113 F.3d at 16, the Second Circuit was not satisfied that the sentencing judge had considered the required factors because, unlike here, the judge refrained from fining the defendant without comment on the defendant's ability to pay either a fine or restitution. In *Sanders,* 95 F.3d at 456, the sentencing judge stated that he was "required" to order restitution whereas his restitution order was instead held to be discretionary and the Sixth Circuit was uncertain, in view of a silent record, that the required factors had been considered. There is nothing in the record here that leads us to conclude that the district court believed it had to order restitution and thus *Sanders* is inapposite. Finally, in *United States v. Remillong,* 55 F.3d 572 (11th Cir.1995), the Eleventh Circuit remanded the defendant's sentence to the district court for the third time because the only evidence of consideration of the required factors consisted of the sentencing judge's handwritten note on the Judgment, which indicated only that restitution was appropriate because the defendant had at one time had physical custody of the stolen money. *See* 55 F.3d at 574.

▪ Nor do we find plain error in the sentencing court's conclusion that Bapack should be ordered to pay restitution in the amount of $62,294.50. Bapack bore the burden at sentencing of demonstrating by a fair preponderance of the evidence her financial condition. *See* 18 U.S.C. § 3664(d) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant."). To prevail on appeal she must "show that the record is *devoid of any evidence* that [she] is able to satisfy the restitution order." *Davis,*

117 F.3d at 459 (internal quotation marks omitted; emphasis added). The "burden is particularly acute under the plain error standard of review." *Id.* Bapack has not satisfied her appellate burden, as the Report's unchallenged ability to pay findings suffice to sustain the restitution order.[15] *See United States v. Twitty,* 107 F.3d 1482, 1494 n. 14 (11th Cir.) (sentencing court entitled to rely on uncontroverted findings of presentence report in deeming defendant able to pay restitution), *cert. denied,* —— U.S. ——, 118 S.Ct. 253, —— L.Ed.2d —— (1997). Accordingly, we conclude that the district court did not plainly err in ordering Bapack to pay restitution in the amount of $62,294.50. *Cf. Castner,* 50 F.3d at 1278 ("Although Appellants at time of sentencing had a negative net monthly cash flow, this does not necessarily indicate an inability to pay, particularly when their [presentence reports] reflect past success in business and above average earning capacities."); *Nelson,* 5 F.3d at 259 (holding that although defendant had negative net worth at time of sentencing, record indicated he "demonstrated considerable talent in perpetrating his crime[,]" and thus "[t]he restitution order gives [him] an incentive to apply these talents in a lawful manner upon release to make his victim whole").

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court correctly (1) enhanced Bapack's sentence pursuant to section 3B1.1(c) of the Guidelines, (2) cumulatively enhanced her sentence pursuant to sections 3B1.1(c) and 2F1.1(b)(2)(A) of the Guidelines and (3) ordered her to pay restitution in the amount of $62,294.50. Accordingly, Pauline Ngo Bapack's sentence is

*Affirmed.*

---

**15.** The Report noted as to Bapack's ability to satisfy a future (and joint) restitution obligation: (1) she has made a good living since seeking asylum in this country in 1984; (2) she is trained as a nurse; (3) she has a long and stable history of successful employment as a nurse; and (4) she possesses entrepreneurial talent as evidenced by her ability to obtain the necessary certifications for, and launch, her own home health care agency. *See* Report ¶¶ 44–57.