*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0375p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 04-5018

JAMES RONNIE ROTHWELL,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-00125—Curtis L. Collier, District Judge.

Argued: June 8, 2004

Decided and Filed: October 29, 2004

Before: MARTIN and SUTTON, Circuit Judges; QUIST, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William T. Alt, Chattanooga, Tennessee, for Appellant. Gary Humble, UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** William T. Alt, Chattanooga, Tennessee, for Appellant. Gary Humble, Harry S. Mattice, Jr., UNITED STATES ATTORNEYS, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

    QUIST, District Judge. This appeal raises a question of interpretation of the United States Sentencing Guidelines. The issue is whether the district court erred in determining the amount of loss attributable to the defendant, James Ronnie Rothwell ("Rothwell"), a contractor with a Small Business Administration disaster relief loan, who filed a false request for progress payments ("Borrower's Progress Certification") in the amount of $103,370. Rothwell later ostensibly expended in excess of the fraudulently obtained funds to complete the construction project. For the reasons set forth below, we reverse the decision of the district court.

_____

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

1

## I. *Facts*

In November 1996, Rothwell, a general contractor by occupation, purchased two adjacent properties in Chattanooga, Tennessee. One of the properties, located at 2312 28th Street, had a building on it which was destroyed by a storm in March 1997. Rothwell applied for, and was granted, a disaster relief loan from the SBA to replace the 2312 28th Street property. The SBA determined the replacement value of the building to be $470,021. Costs of debris removal and working capital totaled $107,533. The SBA approved a loan in the total amount of $577,600, to be used only on the 2312 28th Street property. The SBA later approved an increase in the loan amount to a total of $784,600.

As is typical with construction loans, advances of the loan proceeds were made during the course of the construction of the building at 2312 28th Street. The applications for progress payments were supported by invoices and payroll records and by the signature of Rothwell certifying that the submitted documents reflected expenses actually incurred in the effort to reconstruct the damaged property. At the time the building at 2312 28th Street was being reconstructed, Rothwell began to erect an identical building on the site adjacent to 2312 28th Street.

The parties agree that on at least two occasions, Rothwell submitted at least four invoices that did not represent costs incurred on the 2312 28th Street property. The SBA advanced about $103,370 in reliance upon the false invoices and certification.[1] In all likelihood, at least a portion of the money advanced in reliance upon the false certification was used to build the property adjacent to 2312 28th Street.

The SBA disbursed a total of $670,148 on the 2312 28th Street property loan, and Rothwell claims that he spent a total of $742,118.59 (inclusive of the SBA loan) on the building. Thus, in spite of the false certification and invoices, Rothwell claims that he ultimately replaced the funds that he fraudulently obtained from the SBA and that such funds were used in the construction of the building, as envisioned under the terms of the SBA loan agreement, because his total expenses exceeded the loan amount by $71,971. Rothwell made 23 monthly installment payments on the loan, but he defaulted on the loan when he was unable to find tenants for the buildings. The SBA foreclosed on the property and, on October 5, 2001, sold the property for $125,000.[2] Therefore, the SBA's loss on the project was about $545,000.

Rothwell was indicted for three counts of mail fraud and one count of false statement in connection with the SBA loan. Rothwell pled guilty to Count 4 for having made a false, fictitious, and fraudulent material statement and representation in violation of 18 U.S.C. § 1001. The charge and the conviction related solely to the false Borrower's Progress Certification by which Rothwell obtained the $103,370.

The Presentence Investigation Report stated that the amount of the loss to be determined under U.S.S.G. § 2B1.1(b) should be $103,370, the amount the SBA paid in reliance upon Rothwell's false certification and invoices. Rothwell objected, arguing that the SBA's loss on the project was not $103,370 because the money that he obtained by false statements had actually been spent on the project prior to the Government's discovery of the fraud. Therefore, Rothwell concluded, the *intended* loss under the applicable Guideline was zero. The Government advocated that the *actual* loss be set at the amount paid by the SBA in reliance upon the false certification and invoices - $103,370.

The district court first determined to look at *actual* loss rather than *intended* loss. But the district court did not simply determine the amount of the loss based upon the amount paid on the false certification during the course of the project. Rather, the district court accepted Rothwell's counsel's word that the

---

[1] The indictment and plea agreement both indicate that Rothwell submitted one false Borrower's Progress Certification. It is not clear from the record whether there were other certifications that covered the fraudulently advanced funds.

[2] The SBA bid the property in at $250,000 at foreclosure and ultimately resold the property for $125,000. The SBA credited Rothwell $250,000 on the loan.

taxpayers actually lost $500,000 on the project and then concluded, "I do think that it is fair to attribute to him some percentage of that actual loss. And I think that roughly 20 to 25 percent of that would be fair." That brought the district court to a loss of about $103,000, but by a different route than advocated by the Presentence Investigation Report.

Using the 2002 version of the Sentencing Guidelines, the district court then determined Rothwell's Guideline Offense Level to be 6 pursuant to U.S.S.G. § 2B1.1(a), with another 8 points added pursuant to U.S.S.G. § 2B1.1(b)(1)(E), which requires an 8 point enhancement if the loss sustained by the victim is more than $70,000 but less than $120,000. After deducting two points for acceptance of responsibility under U.S.S.G. § 3E1.1, the district court sentenced Rothwell to five months imprisonment, plus two years of supervised release with five months home detention. The district court also ordered restitution in the amount of $103,370.

Rothwell filed a timely appeal contesting only the district court's determination of the amount of loss attributable to his having filed the false certification and invoices to obtain the progress payments.

## II. *Discussion*

Rothwell's argument on appeal is essentially the same as he presented to the district court: that the false certification made to the SBA "can only be seen to have caused a portion of the total loan to be advanced prematurely. As to those funds, he replaced them voluntarily." (Appellant's Br. at 7.) Rothwell further asserts that there was "no basis to causally connect [his] offense with the fact that there was an eventual default on the loan." (*Id.* at 11.) Therefore, he argues, there is no loss. And, if there is no loss, then he was wrongfully assessed the eight offense level points pursuant to U.S.S.G. § 2B1.1(b)(1)E).

Under the Sentencing Guidelines, the district court is to determine the amount of loss by a preponderance of the evidence, and the district court's findings are not to be overturned unless they are clearly erroneous. *United States v. Guthrie,* 144 F.3d 1006, 1011 (6th Cir. 1998). However, "whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court." *United States v. Garner*, 940 F.2d 172, 174 (6th Cir. 1991).

U.S.S.G. § 2B1.1 is the Guideline to be used in determining Rothwell's sentence. This Guideline, as is pointed out earlier in this Opinion, adds levels depending upon the amount of loss caused by a defendant's fraud. U.S.S.G. § 2B1.1(b)(1). Application Note 2 to § 2B1.1 provides guidance for the determination of loss. The application note states that "loss is the greater of actual loss or intended loss." U.S.S.G. § 3B1.1, cmt. (n.2) (2002). "Actual Loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense," and "Intended Loss" is "the pecuniary harm that was intended to result from the offense . . . includ[ing] intended pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 3B1.1, cmt. (n.2(A)(i) and (ii)). In situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information. U.S.S.G. § 3B1.1, cmt. (n.2(C)). Such estimates "need not be determined with precision." *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003).

As noted above, the district court determined the loss in this case by taking the $500,000 loss which the SBA realized on the foreclosure of the property and assigning a percentage of that loss as representing the portion of the actual loss caused by Rothwell's false statement to the SBA. The $103,370 which the district court determined to be the portion of the actual loss attributable to Rothwell was about equal to the intended loss identified in the Presentence Investigation Report. The district court's actual loss analysis was faulty, however, because it ignored the causation requirement inherent in the rules for determining loss. *See United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000) ("Like the other courts to consider this provision, we believe that the term 'resulted from' establishes a causation requirement."); *United States v. Marlatt*, 24 F.3d 1005, 1007 (7th Cir. 1994) (applying a causation analysis to the determination of loss

caused by the defendant's failure to disclose that the titles to condominiums were heavily encumbered by liens). This court has also recognized that the Sentencing Guidelines import the legal concept of a causal relationship between the defendant's conduct and the determined loss. *United States v. Chary*, Nos. 97-6394, 97-6395, 1999 WL 236189 (6th Cir. Apr. 14, 1999), applied Tennessee law to determine whether the defendant's actions caused the loss:

> The proximate cause of an injury generally is that act or omission which immediately causes or fails to prevent the injury or an act or omission occurring or concurring with another which, but for that act or omission, the injury would not have occurred. And the proximate cause is not necessarily that which is next or last in time or place, but which is a procuring, efficient, and predominant cause; the term means closeness in causal relation.

*Id.* at *3 (quoting *Solomon v. Hall*, 767 S.W.2d 158, 161 (Tenn. App. 1988) (citing *Tri-State Transit Co. v. Duffey*, 173 S.W.2d 706, 712 (Tenn. App. 1940)). Causation includes two distinct principles, cause in fact, or what is commonly known as "but for" causation, and legal causation. *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996). While the former is always a necessary condition of causation which often is easily satisfied, the ultimate question is whether the cause in fact is legally sufficient "to warrant imposing liability upon the actor." *Farwell v. Un*, 902 F.2d 282, 290 (4th Cir. 1990). *See also Marlatt*, 24 F.3d at 1007 (stating that "the presence of but-for causation is ordinarily a necessary condition but rarely a sufficient one").

Rothwell's act of fraudulently obtaining one or more progress payments in an otherwise legitimate loan transaction cannot reasonably be considered to have caused the SBA's loss under either a "but for" or a legal cause analysis.[3] The SBA incurred the loss on foreclosure because Rothwell was unable to make the loan repayments. In fact, Rothwell made payments on the loan for 23 months and then defaulted. Neither the district court nor the Government provided any explanation of why or how Rothwell's fraudulent conduct during the construction of the building made it more likely that Rothwell would later default on the loan.[4] There are myriad explanations for the default – an unsound business risk, a poor economy, excess warehouse or office space in the local market, or developments in unrelated transactions affecting Rothwell's ability to repay the SBA loan – all of which are more likely causes than the fraud-induced progress payment.[5]

Although Rothwell concedes that the $103,370 he obtained through the fraudulent invoices represents the intended loss, he argues that the district court should have reduced the loss to zero because the construction costs of the project exceeded the loan amount. Application Note 2(E)(i) to U.S.S.G. § 2B1.1 provides:

---

[3]The record does not indicate whether the $103,700 was included entirely in a single payment or was part of two or more payments.

[4]The Government argues in its brief that the district court was entitled to estimate the loss caused by the false invoices because "[d]etermining the amount of loss was complex because of the defendant's confusion of his business records and lack of adequate record keeping." (Appellee's Br. at 9.) This argument misses the point because the district court was permitted to estimate the amount of loss only if it bore a legally sufficient causal relationship to Rothwell's conduct.

[5]One argument, though attenuated, could be that because he failed to put all of the loan proceeds into the project, Rothwell was "upside down" in the sense that the project could not generate the level of rents needed to repay the loan. But, given the district court's acceptance of the Presentence Investigation Report's findings that the construction costs exceeded the loan amount and that an April 20, 1998, appraisal of the property valued the property at $850,000, there is no factual basis for the argument.

(E)     *Credits Against Loss*. – Loss shall be reduced by the following:

(i)     The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

*Id.*

The district court accepted Rothwell's claimed construction expenditures as part of its acceptance of the factual findings in the presentence report. Because the district court did not question or delve into this factual assertion at the sentencing hearing, we have no reason to review this finding on appeal. Although it accepted this fact, the district court did not credit the expenditures in calculating the loss. The district court did not give a specific explanation for its refusal to do so, but its reasoning seems to be that no credit should be given because regardless of the amount Rothwell spent on the project, in the end the fair market value was several hundred thousand dollars less than what the parties had expected. This is essentially the Government's position on appeal, which we reject because it shifts the risk of loss to Rothwell without justification. That is, if a bank loans a borrower $1000 to purchase a car having a value of only $500, it may be a bad business decision by the bank but it is not fraud in the absence of a misrepresentation by the borrower affecting the initial loan decision. We are not presented with a situation where the borrower misrepresented the value or nature of the collateral or where the bank changed its position because of the borrower's fraudulent misrepresentations. Because the expenditures on the project exceeded the amount envisioned under the loan agreement, Rothwell returned or replaced the money he improperly obtained before the offense was detected and is thus entitled to a credit equal to the amount of the replaced funds – $103, 370.

Finally, we conclude that the district court erred in ordering restitution. "An award of restitution must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Liss*, 265 F.3d 1220, 1231 (7th Cir. 2001). We have determined that Rothwell's fraudulent conduct did not cause the SBA's loss resulting from the default. Accordingly, there is no basis for an award of restitution.

### III. *Conclusion*

For the foregoing reasons, we **REVERSE** the judgment of the district court and remand for recalculation of Rothwell's sentence in accordance with this opinion.