**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0566n.06
Filed: September 18, 2008

No. 07-5831

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| WILLIE ALFRED MASON, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

**Before: MOORE and COLE, Circuit Judges; and GRAHAM,\* District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Willie Alfred Mason

("Mason") appeals his convictions for making false statements to obtain federal employees'

compensation benefits in violation of 18 U.S.C. § 1920 and for bankruptcy fraud in violation of 18

U.S.C. § 152(3), as well as his sentence of forty-two months in prison. Mason makes three

arguments before this court: 1) that the district court erred in excluding certain psychiatric records

at trial; 2) that the district court did not comply with Rule 32(i)(3) of the Federal Rules of Criminal

Procedure in determining the amount of loss attributable to Mason's conduct for sentencing

purposes; and 3) that the district court erred in determining the amount of loss. For the reasons

explained below, we **AFFIRM** Mason's convictions and sentence.

---

\*The Honorable James L. Graham, United States District Judge for the Southern District of
Ohio, sitting by designation.

# I. BACKGROUND

In June, 1992, Mason was injured on his job at the Veteran's Administration ("VA") Medical Center in Memphis, Tennessee. He subsequently filed a claim with the Office of Worker's Compensation Programs ("OWCP") and began receiving employees compensation benefits. To establish their continuing eligibility, beneficiaries are periodically required to submit a form known as a "1032," which includes questions about employment status. Question two on the form asks, "Were you self-employed or involved in any business enterprise in the past 15 months?" Joint Appendix ("J.A.") at 62-101 (Trial Exs. 5-7, 1032 Forms). Although Mason obtained a contractor's license and started his own company, WAM Construction, Inc., in late 1994, he answered, "No," to question two on the 1032 form he submitted in May 1995 and on each 1032 form he submitted thereafter, through 2005.

On May 17, 2005, a grand jury indicted Mason on nine counts of making false statements to obtain federal employees' compensation in violation of 18 U.S.C. § 1920. A four-count superseding indictment was returned on September 29, 2005. Counts 1 and 2 charged Mason with violations of § 1920, and Counts 3 and 4 charged Mason with making false statements under penalty of perjury in connection with a bankruptcy proceeding in violation of 18 U.S.C. § 152(3).

During his trial, which began on March 5, 2007, Mason attempted to admit into evidence two letters and a report prepared by a psychiatrist, Dr. Roger Vogelfanger, diagnosing Mason with "major depression psychotic, recurrent," "recurrent paranoid ideation or delusion," and "homicidal" and "suicidal ideation." J.A. at 126-31 (Trial Ex. A). The letters, dated September 16, 1993, and July 15, 1999, respectively, are addressed to officials at the VA Medical Center and explain that Mason's psychiatric illness prevented him from returning to work. The third document is an admission and

2

discharge summary prepared when Mason was admitted to St. Francis Hospital in July 1993. During

Mason's direct examination, his attorney argued that testimony concerning Mason's psychiatric

condition, to be supported by these medical records, was relevant to show that Mason was "suffering

from paranoid delusions," explaining that this illness "goes to his knowledge, it goes to his

willfulness and it goes to his intent. If his intent was to avoid something and not to willfully deceive

anyone, then that would be relevant." J.A. at 193 (Trial Tr. at 270). The court advised Mason's

attorney that, to introduce this testimony, he would need to "put on an expert who talks about it,"

J.A. at 192 (Trial Tr. at 269), because its relevance to Mason's knowledge would otherwise be

beyond the capability of the jury to understand.

Mason's attorney later attempted to introduce the records, stating, "I know we agreed as to

authenticity, but not admissibility, which is fair enough, but these [are] medical records that detail

Mr. Mason's psychiatric illness." J.A. at 199 (Trial Tr. at 322). The government stipulated to the

authenticity of the documents as doctor's reports, but objected to their admission on both hearsay

and relevance grounds. The district court agreed that the evidence presented hearsay problems and

was of questionable relevance:

> But it is hearsay, it is relevant to some degree, although it is hard to understand, and
> it is certainly unclear as to how it is relevant to the issues in the case. . . . [I]t
> definitely goes to state of mind in a period preceding the—several years, the events
> that are alleged in this case. So time-wise, it's problematic. It's not current.

J.A. at 202-03 (Trial Tr. at 325-26).

Conceding that the records were hearsay, Mason's attorney argued that the documents were

admissible under "the medical records exception." J.A. at 204 (Trial Tr. at 327). The district court

considered the applicability of two hearsay exceptions: statements for purposes of medical diagnosis

3

or treatment under Rule 803(4) of the Federal Rules of Evidence and records of regularly conducted activity under Rule 803(6). The court found Rule 803(4) inapplicable, because the records were not statements made by the patient to the doctor for purposes of treatment. Conceding this point, Mason's attorney stated that "the only exception would be a record of regularly conducted activity" and that he was "going under 803(6)" because he didn't "think there's any statements." J.A. at 205, 207-08 (Trial Tr. at 328, 330-31). Considering Rule 803(6), the district court discussed the two letters separately from the hospital records. First, the court found that "these two letters would not be prepared in the ordinary course, these were especially prepared," also noting that "they're not contemporaneously prepared." J.A. at 205, 208 (Trial Tr. at 328, 331). The court did find, however, that the hospital admission and discharge summary likely was kept in the ordinary course and "comes pretty close to meeting the record of regularly conducted activity." J.A. at 210 (Trial Tr. at 333).

The district court excluded the hospital report under Rule 403, however, finding that, even if it fell within a hearsay exception, it would be too confusing to the jury. First, the court considered the government's argument that the records reflected Mason's state of mind in 1993 and 1999, years earlier than the time of the offenses charged, all after 2000, finding that "time-wise," the records were "problematic." J.A. at 203 (Trial Tr. at 326). Overall, the court found that the jury would be confused as to how to use these records:

> The document says a lot of things. And we put this document in with no expert explanation of how it relates to the issues in this case, I think we're inviting guesses and speculation, and that's not what we want to do. . . . This has the problem of the confusion being far greater than any probative value, and under 403, frankly, the unfair prejudice could be disturbing. This would require a medical—an expert explanation as to how it related to an issue in this case, or something else, some other document that explained how it related to this case that was prepared and could be

4

received. . . . [T]he last document that you gave me, which is this St. Francis record[,] comes pretty close to meeting the record of regularly conducted activity, but is confusing. It's got all sorts of material in it that's problematic, and it's not relevant on any issue the jury is going to have to decide. . . . [I]t cannot be shown in and of itself, which is all we have got, to be relevant to any issue the jury would have before it . . . .

J.A. at 209-10 (Trial Tr. at 332-33).

On March 7, 2007, the jury returned a verdict of guilty on all four counts. The Presentence Investigation Report ("PSR") calculated a total offense level of twenty-two. As part of that calculation, in computing the offense level for Counts 1 and 2, the PSR increased the base offense level by twelve levels under § 2B1.1(b)(1)(G) of the United States Sentencing Guidelines ("U.S.S.G."), because the amount of loss was more than $200,000 but not more than $400,000. The calculated amount, $265,575.59, was supposedly the total amount of benefits Mason had received as a result of the nine fraudulent 1032 forms that he submitted to OWCP. The resulting sentencing guideline range was forty-one to fifty-one months.

In his position paper responding to the PSR, Mason made two objections to the amount of loss: 1) the amount should not have included benefits Mason received before starting his construction company; and 2) the amount should be reduced by the amount of retirement benefits to which Mason would have been entitled had he elected retirement rather than disability compensation. In its response, the government agreed that the amount of loss should not include amounts received before Mason began working in November 1994 and stated that the loss amount should be $357,100.86, asserting that this is the amount Mason received in benefits from December 1, 1995,[1] through February 17, 2007, although the government did not fully explain why this amount

_____

[1]Because December 1995 was over a year after Mason started his construction business, this date appears to be a typographical error. The government asserted elsewhere in its response that

5

was greater than the $265,575.59 calculated in the PSR. The government disagreed, however, regarding Mason's argument for a reduction for retirement benefits, arguing that Mason would not have been entitled to disability-retirement benefits under 5 U.S.C. § 8337 once he began working for himself, because such benefits terminate upon a medical examination showing recovery. An Addendum to the Presentence Report was submitted prior to the sentencing hearing, incorporating the victim-impact statement submitted by the Department of Labor, which set the amount of loss at the higher amount of $357,100.92, reflecting all payments Mason received from November 1994 through February 2007, when Mason stopped receiving payments. The PSR Addendum noted that the increased amount would not increase the sentence, as the loss was still between $200,000 and $400,000.

The district court conducted a sentencing hearing on June 28, 2007, at which Mason primarily renewed his argument that he should receive credit for any benefits to which he otherwise would have been entitled. The court heard testimony from a government witness and considered arguments from both parties regarding the other benefits to which Mason believed he would have been entitled had he chosen retirement benefits rather than disability compensation. The court noted that, even if Mason had elected to retire, had he then been honest about being self-employed, "everything would have been over" regarding his entitlement to benefits. J.A. at 237 (Sent. Hr'g Tr. at 33). Finally, the court asked, "Well, we've gone over this very thoroughly. Anything else from anyone else on these points?" J.A. at 239 (Sent. Hr'g Tr. at 35). When Mason's attorney again questioned whether Mason would have been entitled to some other benefit, the court stated that "it

---

Mason began his business in November 1994 and that he was not entitled to benefits after this date. The November 1994 date also was used in the PSR Addendum.

6

is clear that the argument is so hypothetical about his being disabled that—I don't mind listening to it, but the proof all belies that." J.A. at 240-41 (Sent. Hr'g Tr. at 36-37).

The district court then questioned the increase from the original amount in the PSR report, $265,575.59, to the larger amount of $357,100.92, stating that, although the higher number was "defensible because of the reasons the government set out in the proof in the case," the court was concerned about fair notice to Mason. J.A. at 242 (Sent. Hr'g Tr. at 39). The court found, however, that "[i]t is not going to change the range and, in reality, I'm going to be thinking about the 260,000 plus number most of the time." J.A. at 242-43 (Sent. Hr'g Tr. at 39-40). After further explanation from the government that the higher amount was accurate, the court agreed with the position of the government:

> The court adopts the position as set out by the United States as articulated in the hearing also and as discussed by the court during this hearing today. That means that the position—that is, the objection as to the amount is overruled, and the position as articulated in the government's papers is adopted.
>
> . . . .
>
> . . . The government argues for and is in fact correct about the actual loss in this case to the government as being $357,192.[2]

J.A. at 244-45 (Sent. Hr'g Tr. at 42-43). Mason was sentenced to forty-two months of imprisonment on each count, to be served concurrently, and three years of supervised release on each count, also served concurrently, and ordered to pay restitution of $357,100.92.

---

[2]The district court apparently misspoke here, as the amount discussed elsewhere is $357,100.92.

## II.  ANALYSIS

### A.  Exclusion of Psychiatric Records

Mason argues that the district court erred by not admitting the psychiatrist's letters and hospital report into evidence, because there was an agreement as to their authenticity, they fell within a hearsay exception, and they were relevant to negate Mason's intent or willfulness under 18 U.S.C. § 1920.  Contrary to Mason's assertion, documents are not admissible merely because the parties have stipulated to their authenticity.  Hearsay and relevance are separate hurdles that the party attempting to introduce the evidence must overcome.  Even assuming the existence of an agreement as to the authenticity of the documents, the district court did not err in determining that the letters do not fit within a hearsay exception and that the hospital report, even if admissible under a hearsay exception, should be excluded because its capacity to confuse and mislead the jury substantially outweighs any probative value.

#### 1.  Standard of Review

"In reviewing a trial court's evidentiary determinations, this court reviews de novo the court's conclusions of law, e.g., the decision that certain evidence constitutes hearsay, and reviews for clear error the court's factual determinations that underpin its legal conclusions."  *United States v. Payne*, 437 F.3d 540, 544 (6th Cir.), *cert. denied*, 547 U.S. 1217 (2006) (quoting *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005)).  "This standard is consistent with the Supreme Court's admonition in *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997), that we review evidentiary decisions for an abuse of discretion, because it is an abuse of discretion to make errors of law or clear errors of factual determination."  *Id.*; *see also United States v. Davis*, 514 F.3d 596, 611 (6th Cir. 2006).

8

**2. Hearsay**

As an initial matter, we note that the letters and report are hearsay under Rule 801(c) of the Federal Rules of Evidence, because they are not statements made while testifying and were offered for the truth of the matter asserted, that Mason suffered from psychiatric illness. Mason argues that the records are not inadmissible hearsay because they fall within the hearsay exceptions set out in Rules 803(3), 803(4), and 803(6). Only Rules 803(4) and 803(6), however, were raised by Mason at trial.

Because Mason did not raise the Rule 803(3) exception at trial, we review admissibility under Rule 803(3) for plain error. *See United States v. Humphrey*, 279 F.3d 372, 377-78 (6th Cir. 2002). Under any standard, however, the district court did not err in failing to admit the medical records under Rule 803(3). Rule 803(3) makes admissible statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition." Fed. R. Evid. 803(3). Because the letters and report were offered as evidence of Mason's state of mind and emotional condition, not that of the declarant, Dr. Vogelfanger, Rule 803(3) does not apply.

The statements likewise are not admissible under Rule 803(4). Rule 803(4) provides an exception to the hearsay rule for statements "made for purposes of medical diagnosis or treatment." Fed. R. Evid. 803(4). However, "803(4) applies only to statements made by the one actually seeking or receiving medical treatment." *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). As these statements were made by Dr. Vogelfanger, not by Mason, the patient, these records are not admissible under the Rule 803(4) hearsay exception.

Considering the exception for records of regularly conducted business activity contained in Rule 803(6), the district court correctly found that this exception was inapplicable to the two letters,

because both were "especially prepared" and were "not a regularly prepared document in the course of the ordinary operation of the hospital." J.A. at 205-06 (Trial Tr. at 328-29). Both of these letters were specially written to officials at the VA Medical Center, specifically discussing Mason's inability to return to work at the VA. Further, Rule 803(6) requires "the testimony of the custodian or other qualified witness" to show that making the letters was a regular practice, and Mason offered no such testimony. The district court found that the hospital report, however, "comes pretty close to meeting the record of regularly conducted activity," but excluded the report under Rule 403. J.A. at 210 (Trial Tr. at 333).

### 3. Fed. R. Evid. 403

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. Mason argues that the medical records were relevant to negate the specific intent required under 18 U.S.C. § 1920 and to corroborate Mason's testimony regarding antidepressants, and that any prejudice is slight because the records are in plain language.

The district court did not abuse its discretion in determining that the capacity of the medical record to confuse and mislead the jury outweighed its probative value. Although Mason's state of mind at the time of the offenses may have been relevant to negate mens rea, *see United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001), *cert. denied*, 534 U.S. 1085 (2002), this relevance was questionable because of the time lapse between when the records were made and when the crimes were committed. As the district court noted, "time-wise, it's problematic." J.A. at 202-03 (Trial Tr. at 325-26). The hospital report is from 1993, but no crimes were charged until 2001, and no false statements were alleged until after Mason began his business in late 1994. Likewise, the report is

10

not relevant to corroborate Mason's testimony that he was on medication when he met with government agents and signed one of the 1032 forms, because these meetings occurred in 2005.

Moreover, the district court found that if "we put this document in with no expert explanation of how it relates to the issues in this case, I think we're inviting guesses and speculation." J.A. at 209 (Trial Tr. at 332). Moreover, the court was concerned that the report might tend to confuse the jury into improperly considering an insanity defense. Even if there were some relevance, getting from Mason's depression and paranoia to his lack of knowledge of making false statements requires a leap that a jury may not be able to make without expert testimony, and the district court did not abuse its discretion in finding that this capacity to confuse and mislead outweighed any slight relevance.

## B. Amount-of-Loss Calculation

U.S.S.G. § 2B1.1(b)(1)(G) provides for a twelve-level enhancement where the monetary loss resulting from larceny, embezzlement, or other forms of theft is greater than $200,000 but not more than $400,000. Mason argues both that the district court violated Rule 32(i)(3) of the Federal Rules of Criminal Procedure by not ruling on the amount of loss when applying a twelve-level enhancement pursuant to § 2B1.1(b)(1)(G) and that the district court erred in determining the amount of loss.

### 1. Standard of Review

We review de novo the question of whether the district court violated Rule 32(i)(3)(B) by failing to make factual determinations regarding the amount of loss. *United States v. White*, 492 F.3d 380, 414 (6th Cir. 2007). We review for clear error the district court's calculation of the amount of loss. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006), *cert. denied* , --- U.S. ---, 127

11

S. Ct. 1336 (2007); *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004).  The application

of the Guidelines to these facts is a question of law that we review de novo.  *Rothwell*, 387 F.3d at

582.

### 2.  Fed. R. Crim. P. 32(i)(3)

At sentencing, the district court "must—for any disputed portion of the presentence report

or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either

because the matter will not affect sentencing, or because the court will not consider the matter in

sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  This rule "makes clear that controverted matters at

sentencing only require a ruling if the disputed matter will affect the eventual sentence."  *United*

*States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003).  As we have previously stated,

> As a threshold matter, the defendant must actively raise the dispute during the
> sentencing hearing before the district court's duty to find facts arises.  Once the
> defendant calls the matter to the court's attention, the "court may not merely
> summarily adopt the factual findings in the presentence report or simply declare that
> the facts are supported by a preponderance of the evidence."  Rather, the district court
> must affirmatively rule on a controverted matter where it could potentially impact the
> defendant's sentence.  We hasten to note, as we have done many times, that we
> require "literal compliance" with this Rule "for a variety of reasons, such as
> enhancing the accuracy of the sentence and the clarity of the record."

*White*, 492 F.3d at 415 (citations omitted).

Mason argues that the district court violated Rule 32(i)(3)(B) by not identifying the specific

evidence used in the loss calculation and not explaining how the loss was calculated.  The district

court, however, did not fail to rule on any disputed issue raised by Mason that would have affected

his sentence.  Mason raised two issues concerning the amount of loss.  The first issue, exclusion of

benefits received before Mason began working, was no longer disputed, as the government and the

PSR Addendum both stated that the amount of loss did not include benefits received before

12

November 1994.  Regarding the second issue, a reduction for retirement benefits, the court communicated its findings through a dialogue with the parties at the sentencing hearing, finding that the "proof all belies" the argument that Mason would have been entitled to retirement benefits and ruling on this controverted matter in accordance with Rule 32(i)(3).  J.A. at 241 (Sent. Hr'g Tr. at 37).  The court did not summarily adopt the PSR or the government's position, but heard arguments from both parties, asked for any further arguments, and found that Mason would not have been entitled to benefits.

Although the district court relied on the PSR's factual finding as to the total benefits received during the relevant time period even though the PSR did not clearly delineate how the loss was calculated, Mason did not dispute this portion of the PSR.  Where we have concluded that a district court violated Rule 32(i)(3) or its predecessor, Rule 32(c)(1), by not providing calculations on the amount of loss, the district court had failed to address a specific objection to the amount of loss calculation.  *See United States v. Nelson*, 356 F.3d 719, 722-23 (6th Cir. 2004); *United States v. Monus*, 128 F.3d 376, 396-97 (6th Cir. 1997), *cert. denied*, 525 U.S. 823 (1998).  Further, although the district court did not make detailed findings as to why a loss of $357,100.92 was correct rather than the original amount of $265,575.59, the court specifically ruled that "[i]t is not going to change the range," J.A. at 242 (Sent. Hr'g Tr. at 39), as permitted under Rule 32(i)(3)(B).  The district court therefore followed Rule 32(i)(3)(B):  for all disputed matters, the court "rule[d] on the dispute or determine[d] that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."[3]

_____

[3]Mason also argues that the district court violated Rule 32(i)(3)(C) by not making a written finding.  Rule 32(i)(3)(C), however, only requires the court to "append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau

### 3. Amount of Loss

The district court's determination that the amount of loss caused by Mason's conduct totaled $357,100.92 was not clearly erroneous. In calculating the sentence, the court must determine the amount of loss by a preponderance of the evidence. *Blackwell*, 459 F.3d at 772; *Rothwell*, 387 F.3d at 582. Because the court "need only make a reasonable estimate of the loss," however, "the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1 cmt. n.3(C). Here, the victim-impact statement claimed a loss of $357,100.92 as the total benefits received by Mason from November 1994 to February 2007, and Mason offers no alternative method of calculation. The district court, after hearing the arguments of both parties, found that Mason should not receive a reduction for retirement benefits to which he would otherwise have been entitled, because he actually would not have been entitled to any retirement benefits. Under these circumstances, there is no clear error in the district court's calculation.

Moreover, any error in the precise calculation was harmless. Although it is unclear how the number changed from $265,575.59 in the PSR to $357,100.92 in the PSR Addendum, even if the higher amount is incorrect, the error is harmless, because the benefits received were still more than $200,000. The evidence submitted at trial and at the sentencing hearing easily supports an amount of loss above $200,000. In December 1993, Mason began receiving benefits of $1,438.30 every four weeks. This amount was later increased to approximately $1,900 every four weeks. Mason began his business in November 1994, at which time he was no longer entitled to benefits, and received

of Prisons." Nowhere does Mason allege that the court sent a copy of the PSR to the Bureau of Prisons without attaching a copy of the findings. Further, Mason alleges no prejudice as a result of any such failure, making remand unnecessary. *See United States v. Talley*, Nos. 97-1938, 98-1280, 1999 WL 685938, at *5 n.3 (6th Cir. Aug. 24, 1999) (unpublished opinion).

his last payment in February 2007.  Even assuming the lower payment amount of $1,438.30 every four weeks from December 1994 through February 2007, Mason received at least $228,689.70.  With the increase in benefits included, the amount is even greater.  As the district court noted, the higher number "is not going to change the range."  J.A. at 242 (Sent. Hr'g Tr. at 39).  As the benefits fraudulently received total more than $200,000, any error in using a larger amount was harmless.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Mason's convictions and sentence.