NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0856n.06

No. 11-5452

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Dec 19, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )       ON APPEAL FROM THE
        *Plaintiff-Appellee*,            )       UNITED STATES DISTRICT
                                         )       COURT FOR THE EASTERN
v.                                       )       DISTRICT OF KENTUCKY
                                         )
JERRY WALLACE,                           )              O P I N I O N
                                         )
        *Defendant-Appellant*.           )

BEFORE:    BATCHELDER, Chief Judge; COLE and COOK, Circuit Judges.

COLE, Circuit Judge.  Defendant-Appellant Jerry Wallace pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344.  He signed a plea agreement, consenting to pay $141,000 in restitution to Lehman Brothers FSB.  After the district court entered the plea agreement but before the sentencing hearing, the court learned that Lehman Brothers had filed bankruptcy some years earlier and possibly no longer existed as an entity.  The government presented evidence that Wallace should pay restitution to Fannie Mae as the entity "standing in the shoes" of Lehman Brothers FSB.  The district court entered judgment accordingly.  Wallace appeals the district court's determination that Fannie Mae should receive restitution, arguing that it was not a "victim" under 18 U.S.C. § 3663.  For the reasons that follow, we AFFIRM.

I.

From approximately September 2004 to December 2006, Defendant-Appellant Jerry Wallace engaged in a bank fraud scheme in violation of 18 U.S.C. § 1344. The scheme involved a partner/investor who would purchase an identified property through a private lender, which Wallace arranged. Wallace would repeatedly refinance the property, each time at a progressively inflated amount, and each time earning "cash back" for himself. As a result, the collateral securing each loan would be worth less than the lender believed it to be. Finally, Wallace would induce a second "investor" to purchase the property under false pretenses and under circumstances that Wallace knew were likely to lead to default and foreclosure. Invariably, the lender would foreclose on the property and sell it at a significant loss.

In his plea agreement, Wallace admits to a specific example of his scheme: On September 9, 2004, he caused a partner/investor to purchase a property at 2320 Twigwood Lane, Cincinnati, Ohio ("the Twigwood property") for $240,555.25. He refinanced it several times, inflating the price and collecting "cash back" on the closing each time. On December 27, 2006, he induced an "investor," referred to as G.W., to take out a loan from Lehman Brothers FSB ("Lehman Brothers") for $336,000 and buy the Twigwood property. Ultimately, G.W. defaulted on the loan and Lehman Brothers sold the property for $198,000, suffering a total loss of $138,000.

In the fall of 2008, Lehman Brothers filed for bankruptcy. On November 15, 2010, the district court entered a plea agreement, in which Wallace stipulated to the foregoing facts and that "restitution is owed to Lehman Brothers Bank FSB in the amount of $141,000." The court set a sentencing hearing for March 25, 2011. On March 23, 2011, the district court sua sponte

rescheduled the sentencing hearing for April 6, 2011, due to "being advised by U.S. Probation that there may be an issue regarding the amount of restitution owed by [Wallace], and to what entity." The court ordered both parties to submit briefs within one week.

The government filed no brief, but instead forwarded the following email from Chris LaRoche, Assistant General Counsel for Aurora Loan Services LLC ("the LaRoche Email"):

> I am a senior attorney here at Aurora Loan Services LLC. You have asked me for clarification regarding restitution information related to [G.W.] mortgage loan for property located at 2380 [sic] Twigwood Lane, Cincinnati, Ohio 45237. Aurora Loan Services LLC is the servicer for the underlying [G.W.] mortgage loan on behalf of the investor who owns the [G.W.] loan. As servicer for the loan, Aurora Loan Services LLC is responsible for ensuring that the loss to the investor is minimized and is responsible for making the investor whole for certain expenses related to the [G.W.] mortgage loan.
>
> The [G.W.] mortgage loan was originated by Lehman Brothers Bank, FSB (known as Aurora Bank FSB), a federal savings bank. Aurora Bank FSB is very much still in business. Aurora Loan Services LLC is a wholly owned subsidiary of Aurora Bank FSB. The investor who owns this loan, and for whom Aurora Loan Services acts as mortgage loan servicer, is Fannie Mae as Trustee for Fannie Mae REMIC Trust 2007-W2.

At the hearing, the court accepted the email as evidence, under Rule 1101(d)(3). Ruling orally, it found that Lehman Brothers had "changed names" to Aurora Bank FSB, but otherwise remained the same party for restitution purposes. It ordered Wallace to pay $141,000 in restitution to Fannie Mae as "the successor in interest" and "an appropriate victim for purposes of the Victim Witness Protection Act." It also sentenced Wallace to twelve months and one day in prison, a downward departure from the guidelines range of eighteen to twenty-four months.

II.

*A. Standard of Review*

The Court "review[s] orders of restitution *de novo*." *United States v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005) (reviewing a restitution order under the Victim and Witness Protection Act). "The Court reviews a district court's findings of fact at sentencing as to 'loss' and restitution for 'clear error.'" *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006) (quoting *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir.2004)). The Court reviews a district court's decision not to hold an evidentiary hearing for an abuse of discretion. *United States v. Kuehne*, 547 F.3d 667, 693 (6th Cir. 2008).

*B. Fannie Mae as "Victim"*

The VWPA provides for "mak[ing] restitution to any victim of such [above-described] offense." *See* 18 U.S.C. § 3663(a)(1). This Court defines "victim" under the VWPA "to reach 'indirect' victims . . . as well as 'direct' victims." *United States v. Durham*, 755 F.2d 511, 512-13 (6th Cir. 1985), *abrogated on other grounds by United States v. Clark*, 957 F.2d 248, 253 (6th Cir. 1992). Subsequent to this decision, Congress amended the VWPA to define "victim" as:

> a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663(a)(2). This amendment "expands the definition of 'victim' in cases such as mail fraud," i.e., cases involving schemes to defraud. *United States v. Davis*, 170 F.3d 617, 627 (6th Cir. 1999) (citing *United States v. Jewett*, 978 F.2d 248, 253 (6th Cir. 1992)).

The district court interpreted the VWPA to "permit restitution to be ordered in circumstances such as those presented here," where the direct victim had passed on its loss to a successor in interest. To reach this decision, the district court relied on two Ninth Circuit decisions, *United States v. Youpee*, 836 F.2d 1191 (9th Cir. 1988), and *United States v. Smith*, 944 F.2d 618 (6th Cir. 1991). In *Youpee*, the court upheld a restitution award to the insurance company that indemnified the actual "victim" in the case. In *Smith*, the court upheld a restitution award to the Federal Savings and Loan Insurance Corporation, which had acquired the claims of the defrauded savings and loan institution. The court determined that these cases, although not binding, demonstrated persuasively that the VWPA permitted a "successor in interest" to the direct victim to receive restitution.

The court relied on the LaRoche Email to find that Lehman Brothers "is now known as Aurora Bank FSB." It reasoned that the name change "is not problematic from a restitution perspective to permit the defendant to avoid a recognized restitution obligation." It concluded that Fannie Mae constituted "an appropriate victim for purposes of the [VWPA]," and awarded the judgment originally payable to Lehman Brothers to be paid to Fannie Mae.

Wallace maintains that the court erred in awarding restitution to Fannie Mae, because Fannie Mae is not a "victim" under the VWPA. He argues the VWPA's plain language limits "victims" to "any person *directly* or proximately harmed as a result of the commission of the offense," (emphasis in original) which excludes any entity even one step removed from the defendant's conduct. He contends that *Hughey v. United States*, 495 U.S. 411, 413 (1990), excludes successors in interest, because it permits restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Because the government made no showing of direct harm to Fannie Mae,

nor of any loss that Fannie Mae sustained from Wallace's conduct, Wallace maintains that it can not constitute a proper "victim." He urges the Court to rely on *United States v. Campbell*, 106 F.3d 64 (5th Cir. 1997), which denied an order of restitution to a bank because it had already recovered its losses in full from the sale of the underlying property.

Wallace's reliance on *Hughey* and *Campbell* is misplaced. Both cases address the amount of restitution that a court could order, but not who is entitled to receive such an award. *Hughey* applies to the scope of any order of restitution, "requir[ing] the court to exclude injuries caused by offenses that are not part of the [conspiracy] of which [the defendant] has been convicted." *United States v. Elson*, 577 F.3d 713, 723 (6th Cir. 2009) (quoting *United States v. George*, 403 F.3d 470, 474 (7th Cir.2005)) (citing *Hughey*, 495 U.S. at 418, 420) (second and third brackets in original). *Campbell* stands for the proposition that a victim is "entitled to restitution in the amount of the loss suffered by making a loan to [the defendant]," but not more than that amount. 106 F.3d at 69. The plea agreement that Wallace signed established "the loss caused by the conduct underlying the offense of conviction," as the $138,000 loss that Lehman Brothers sustained as a result of the default.

Furthermore, the VWPA explicitly contemplates restitution awards to parties that fall outside its broad definition of "victim." In cases involving property loss, the VWPA requires any restitution order to include a directive to "return the property to the owner of the property or someone designated by the owner." 18 U.S.C. § 3663(b)(1)(A). In plain terms, "someone designated by the owner" need not be the actual victim of the crime. A related subsection also permits courts to award restitution to "the person who provided or is obligated to provide" compensation that a victim "has received . . . from insurance or any other source." *Id.* § 3664(j)(1). So long as the court limits the

restitution award to "the loss caused by the specific conduct that is the basis of the offense of conviction," *see Hughey*, 495 U.S. at 413, it may issue judgment at its own discretion.

The LaRoche Email explicitly states that "[t]he investor who owns this loan . . . is Fannie Mae as Trustee for Fannie Mae REMIC Trust 2007-W2." With this evidence, the court properly could find that Fannie Mae is the "owner of the property" and require Wallace to return it to them. Alternatively, since a "wholly owned subsidiary" of Lehman Brothers (*sub nom* Aurora Bank) designated Fannie Mae as the owner of the loan, Fannie Mae is "someone designated by the [original] owner of the property." Finally, it was proper for the court to view Fannie Mae as "the person who provided or is obligated to provide the compensation" to Lehman Brothers for its loss. Under any of these interpretations, Fannie Mae is a proper recipient of a restitution award.

Wallace further contends that the district court lacked sufficient evidence to name Fannie Mae as the restitution recipient, and that the court engaged in an erroneous reading of the evidence at its disposal. Wallace argues that the LaRoche Email alone does not suffice for the court to develop "a full understanding of the relationship between Lehman Brothers, Fannie Mae, and Aurora Bank and how those relationships would and could affect the restitution concept." Specifically, Wallace maintains that the district court lacked evidence of "when the loan was purchased, was it purchased at a discount, the type of loan servicer Aurora Loan Services, LLC, was, the type of compensation arrangements it makes with its investors or the performance history of the LLC."

Wallace's argument fails. First, Rule 1101(d) permits courts to accept hearsay in sentencing hearings. *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) (en banc). The Court requires only that "the accused must be given an opportunity to refute [hearsay evidence], and the

evidence must bear some minimal indicia of reliability in respect of defendant's right to due process." *Id.* (quoting *United States v. Robinson*, 898 F.2d 1111, 1115 (6th Cir. 1990)). While the LaRoche Email may lack the degree of reliability that live, in-court testimony contains, this Court has held that statements made by victims' attorneys at sentencing hearings can bear the requisite "indicia of reliability." *See Elson*, 577 F.3d at 732. Therefore, the court properly relied on this evidence.

Second, evidence of the specifics of Fannie Mae's ownership of the loan are immaterial, because Wallace advised the court that he did not challenge the amount of the restitution order. Therefore, he waives any challenge to that amount on appeal.

## C. Evidentiary Hearing

Wallace argues that the district court improperly denied him a full evidentiary hearing as permitted by 18 U.S.C. § 3664, rendering the restitution order an unconstitutional taking of property without due process of law, in violation of the Fifth Amendment. Wallace contends that evidence of Fannie Mae's actual losses could have "altered the outcome of the restitution hearing," potentially changing both the amount of the restitution award and its recipient. Thus, the district court denied him due process in the course of depriving him of property.

Wallace's argument has no merit. The court's decision to "require additional documentation or hear testimony" is discretionary. 18 U.S.C. § 3664(d)(4); *United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000) ("Section 3664(d)(5) does not mandate that such an evidentiary hearing must be conducted.") The statute providing for the restitution hearing contains no criteria for how a court should decide whether or not to hold a hearing. *See* 18 U.S.C. § 3664(d)(4). Wallace

advances no legal basis for claiming a right to an evidentiary hearing, and therefore, the trial court did not abuse its discretion or deny him due process in declining to hold one.

To be sure, the government carries the burden of proving, by a preponderance of the evidence, the amount of restitution owed to a victim. 18 U.S.C. § 3664(e). In this case, however, the government presented evidence that Wallace had agreed to pay a specific amount of restitution to a specific entity. It presented evidence from that specific entity designating an alternative recipient with a direct relationship to the loss that Wallace caused. Wallace presented no evidence to contradict the government, despite having the opportunity to do so. Therefore, the district court did not abuse its discretion by relying on this evidence to establish the amount of restitution.

III.

For the reasons stated above, we AFFIRM the judgment of the district court.