NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0308n.06

Case No. 12-6275

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Apr 23, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JAMES NORMAN TUREK, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | **O P I N I O N** |

**BEFORE: Daughtrey, McKeague, and Griffin, Circuit Judges.**

**McKeague, Circuit Judge.** James Turek was convicted of securities and tax fraud and sentenced to 216 months in prison. He challenges the district court's assessment of his sentence-level enhancements as to the number of victims harmed and the total amount of loss. Turek did not raise an objection to the district court concerning the presentence report, and we cannot discern plain error from the record below. We affirm.

I.

James Turek was the president, CEO, and director of Plasticon International, Inc., a company based in Lexington, Kentucky. Plasticon's stock was publicly traded on the Pink Sheets over-the-counter market. As part of his fraud scheme, Turek falsely claimed that

Plasticon owed him more than $8 million to repay loans he had made to the company. *Id.* He directed his secretary to backdate promissory notes payable to him, and then from 2004 to 2006 had Plasticon issue him more than 5.6 billion shares of stock pursuant to the promissory notes. To circumvent the Securities and Exchange Commission's rules, Turek gave his shares of stock to various people, including his children and deceased aunt, who then sold the stock to other investors and the general public. Turek and his shell company, LexReal Co., LLC received $11.4 million from the stock sales.

In an effort to stimulate demand for Plasticon's stock, Turek issued press releases falsely stating that Plasticon was profitable, even though it was losing millions of dollars, and that it held patents valued as much as $20 million. During an Internet broadcast, Turek falsely stated that he invested millions of dollars in the company and received no compensation for three and a half years. He filed falsified financial statements with the SEC. He also filed false personal tax returns, failing to report more than $12.7 million in income.

In June 2012, the district court held a ten-day jury trial. The government called fifteen witnesses, including several victims of Turek's fraud and a financial investigator. Peter Melley of the Financial Industry Regulatory Authority (FINRA) testified that from May 2006 to November 2007, more than 8,500 accounts lost more than $18.6 million from the purchase of Plasticon stock. The following exchange between the government's lawyer and Peter Melley ensued:

> Q. How many people lost money by purchasing Plasticon stock during this time period?
>
> A. My analysis of trading account information for this period of time showed that approximately 8,500 victim accounts lost money in Plasticon stock, and those investor accounts accounted for approximately $18.6 million in losses.

Trial Tr. at 55–56, PageID # 1604–05.  On June 22, 2012, a jury convicted Turek of 13 counts of securities and tax fraud.

The Presentence Investigation Report ("PSR") grouped the counts into two categories—tax fraud and securities fraud—and used the offense level of 41 from the securities fraud group because it was higher.  This offense level included a twenty-level increase for a total loss amount between $7 million and $20 million and a six-level increase for more than 250 victims.  Based on an offense level of 41, the advisory sentencing guidelines range was 324 to 405 months.  The government asked the court to sentence Turek to 324 months.  At sentencing, Turek asked for a sentence of 120 months.  The district court sentenced Turek to 216 months in prison.  The following exchange between the district court and defense counsel ensued:

> THE COURT: All right. Ms. Hughes, do you have -- that's the sentence I propose to impose. Do you have any objections or requests for additional findings?
>
> MS. HUGHES [DEFENSE COUNSEL]: I have no objections to the sentence and no requests for additional findings, other than the Court indicated it would recommend a medical facility.

Sentencing Tr. at 29, PageID # 2535.  This appeal followed.

## II.

This court has held that if a defendant fails to object to a presentence report, he accepts all of the factual allegations contained in it.  *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).  Moreover, when a sentencing judge asks counsel if she has any objections and she fails to object, as happened here, "then plain-error review applies on appeal to those arguments not preserved in the district court."  *Id.*  We therefore accept the facts stated in the presentence report as true and review for plain error.  *See id.*  "To withstand plain-error review, the litigant must show '(1) error, (2) that is plain, and (3) that affect[s] substantial rights' and that '(4) the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings.'" *United States v. Brock*, 501 F.3d 762, 773 (6th Cir. 2007) (quoting *Johnson v. United States*, 250 U.S. 461, 467 (1997)). A plain error is an error that is "clear" or "obvious." *Johnson*, 520 U.S. at 467. Such plain, obvious errors are only found "in exceptional circumstances" in which "the trial judge . . . was derelict in countenancing it." *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006).

Turek argues that the district court plainly erred in applying the two sentence enhancements. We find that no plain error occurred here, either with respect to the amount of loss or the number of victims. *First*, as to the amount of loss, "[u]nder the Sentencing Guidelines, the district court is to determine the amount of loss by a preponderance of the evidence, and the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Peppel*, 707 F.3d 627, 645 (6th Cir. 2013) (quoting *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004). The district court found that a twenty-level increase in the guideline level applied because the total amount of loss exceeded $7 million. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(K). The district court based its determination on the presentence report, which stated that "8,500 accounts lost more than $18.6 million," and on Melley's testimony that he determined the loss amount by conducting an "analysis of trading account information." Trial Tr. at 55–56, PageID # 1604–05. This clearly provides support for the $18.6 million figure and withstands review for plain error.

*Second*, as to the number of victims, when a fraud offense "involve[s] 250 or more victims," a six-level increase to the guidelines offense applies. U.S. Sentencing Guidelines Manual § 2B1.1(b)(2)(C). It is true that "victim" means "any person who sustained any part of the actual loss," such as an individual, corporation, firm, or company, rather than a bank account. *Id.* § 2B1.1 cmt. n.1. Turek makes much of the fact that Melley testified that "approximately

8,500 *victim accounts* lost money in Plasticon stock," noting that an account is not a person and arguing that this constitutes reversible error. Trial Tr. at 55–56, PageID # 1604–05. Under this standard of review, however, an error regarding the number of victims must be plain, and we cannot say the fact that 8,500 accounts were affected *obviously* does not support a finding that 250 victims were harmed.[1] *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (noting that under plain error review, "the legal error must be clear or obvious, rather than subject to reasonable dispute"). As the government notes, accepting Turek's argument requires the inference that each investor would have had to hold over thirty accounts to reduce the number of victims below 250; this possibility does not constitute the sort of "extraordinary circumstances" warranting reversal under plain error review. *See Vonner*, 516 F.3d at 386 (quoting *Gardiner*, 463 F.3d at 459). The cases Turek cites are unhelpful because they concern the resolution of facts that the parties disputed in district court or the sufficiency of facts, rather than facts accepted as true under plain-error review. *See United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013) ("Mr. Rodriguez objected and argued that there was insufficient evidence in the record to show that the offense involved more than 50 victims."); *see also United States v. Zolp*, 479 F.3d 715, 719–20 (9th Cir. 2007) ("While Zolp did not contest the applicability of a § 2B1.1 enhancement for financial loss, the pre-sentence report ("PSR"), the government, and Zolp each proposed a different method of calculating that loss."); *United States v. Yagar*, 404 F.3d 967, 969 (6th Cir. 2005) (discussing judge-found facts that were not presented to the jury). The

---

[1] Notably, the question asked of Melley was how many *people* lost money, not how many accounts were affected. R. 71, Trial Tr. at 55, PageID # 1604. While it is true that the form of Melley's answer identified the number of *victim accounts*, in light of the exchange, it cannot even be said that construing Melley's answer to mean 8,500 *victims* is plain error. *See id.* at 55–56, PageID # 1604–05.

determination that over 250 victims were harmed is supported by the record, not obviously incorrect, and withstands plain-error review.

III.

Turek did not object to the presentence report, and we discern no plain error from the record below. The judgment of the district court is **AFFIRMED.**