NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0100n.06

No. 22-1342

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Feb 23, 2023

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| JAY DAVID SOULLIERE, JR., | ) | MICHIGAN |
|  | ) | |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

PER CURIAM. Jay David Soulliere, Jr., appeals his 51-month sentence for identity-theft offenses. As set forth below, we **AFFIRM** Soulliere's sentence.

A federal grand jury returned an indictment charging Soulliere and Matthew Vodak, Jr., with conspiracy to commit identity theft, in violation of 18 U.S.C. §§ 371 and 1028A (Count 1); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 2); and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 2 and 1028A (Counts 3 and 4). According to the indictment, Soulliere, a contract employee with the Small Business Administration (SBA), provided Vodak with the personally identifiable information (PII) of third parties maintained in the SBA's computer systems, and Vodak used that PII to make fraudulent documents and purchases in the names of those third parties and on their credit. Among other allegations, Vodak purchased a Land Rover from Jaguar of Troy with a counterfeit check and driver's license using the identity of B.P., whose PII Soulliere obtained from the SBA's files.

Soulliere pleaded guilty to Counts 1 and 4 pursuant to a written plea agreement. Following his guilty plea, Soulliere absconded from pretrial supervision. He was arrested nearly a month later, and the district court revoked his bond.

Prior to sentencing, Soulliere raised several objections to the presentence report, including objections to the application of a 4-level enhancement for a loss amount more than $15,000 but less than $40,000 under USSG § 2B1.1(b)(1)(C), a 2-level enhancement for an offense resulting in substantial financial hardship to a victim under USSG § 2B1.1(b)(2)(A)(iii), a 2-level enhancement for an offense involving the "unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification" under USSG § 2B1.1(b)(11)(C)(i), a 2-level enhancement for abuse of a position of trust under USSG § 3B1.3, and a 2-level enhancement for obstruction of justice under USSG § 3C1.1. Soulliere also objected to the denial of a reduction for acceptance of responsibility under USSG § 3E1.1 and requested a reduction for being a minimal or minor participant in the offense under USSG § 3B1.2. At sentencing, the government conceded the enhancement for unauthorized transfer or use of identification, and Soulliere withdrew his objection to the enhancement for obstruction of justice. The district court overruled Soulliere's other objections and denied any reduction for acceptance of responsibility or mitigating role. Applying a guidelines range of 24 to 30 months based on a total offense level of 16 and a criminal history category of II, the district court sentenced Soulliere to imprisonment of 27 months on Count 1 and a mandatory consecutive term of 24 months on Count 4, for a total of 51 months.

This appeal followed. Soulliere argues that the district court erred in (1) attributing to him the loss associated with Vodak's purchase of the Land Rover, (2) denying him a reduction for

acceptance of responsibility, (3) applying the enhancement for substantial financial hardship, and (4) denying him a reduction for being a minimal or minor participant.

*Loss Amount:* Soulliere first argues that the district court erred in applying a 4-level enhancement for a loss amount more than $15,000 but less than $40,000 under USSG § 2B1.1(b)(1)(C) by attributing to him Vodak's purchase of the Land Rover. "Given the difficulty of calculating loss in a fraud case, 'the district court need only make a reasonable estimate of the loss using a preponderance of the evidence standard.'" *United States v. Igboba*, 964 F.3d 501, 508 (6th Cir. 2020) (quoting *United States v. Ellis*, 938 F.3d 757, 760 (6th Cir. 2019)). "In determining the amount of loss attributable to a defendant pursuant to Guidelines § 2B1.1(b), the district court may consider any 'relevant conduct.'" *United States v. Donadeo*, 910 F.3d 886, 894 (6th Cir. 2018) (quoting USSG § 1B1.3). We review de novo the district court's determination regarding what constitutes "relevant conduct" under USSG § 1B1.3. *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018). Relevant conduct includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> . . .
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions . . . .

USSG § 1B1.3(a). "Accordingly, the amount of loss attributable to a defendant may include any loss that resulted from his/her own criminal conduct, as well as any loss that resulted from certain conduct of others." *Donadeo*, 910 F.3d at 894.

The district court attributed to Soulliere only those loss amounts associated with the PII obtained from the SBA's files, which included the loss to Jaguar of Troy for Vodak's purchase of the Land Rover. Vodak purchased the Land Rover using the identity of B.P., whose PII was obtained from the SBA's files. At sentencing, Soulliere acknowledged that he supplied B.P.'s PII to Vodak but argued that he did not know that Vodak was going to use that information to purchase a vehicle.

The government asserts that Soulliere "committed" and "willfully caused" the transfer of B.P.'s PII to Vodak within the meaning of USSG § 1B1.3(a)(1)(A) and that the loss associated with the Land Rover purchase was a "harm that resulted from" his transfer of B.P.'s PII to Vodak within the meaning of USSG § 1B1.3(a)(3). "[T]he term 'resulted from' establishes a causation requirement." *United States v. Rothwell*, 387 F.3d 579, 583 (6th Cir. 2004) (quoting *United States v. Marlatt*, 24 F.3d 1005, 1007 (7th Cir. 1994)). "Causation includes two distinct principles, cause in fact, or what is commonly known as 'but for' causation, and legal causation." *Id*. "For harms to be 'proximately' [legally] caused by the criminal conduct, they must be 'reasonably foreseeable.'" *United States v. Gamble*, 709 F.3d 541, 549 (6th Cir. 2013) (quoting *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012)). The fraudulent purchase of the Land Rover and resulting loss to Jaguar of Troy would not have occurred but for Soulliere's transfer of B.P.'s PII to Vodak. As the district court observed, "[t]hese offenses don't occur without" Soulliere. The district court asked defense counsel, "Why isn't it reasonably foreseeable that Mr. Vodak would use the information however he wanted . . . to rip people off?" In response, defense counsel

conceded, "It is reasonably foreseeable probably . . . ." The district court properly attributed the loss associated with the fraudulent purchase of the Land Rover to Soulliere as a loss resulting from his own criminal conduct in transferring B.P.'s PII to Vodak. Accordingly, we need not address the parties' arguments about jointly undertaken criminal activity.

*Acceptance of Responsibility:* Soulliere contends that the district court erred in denying him a reduction for acceptance of responsibility under USSG § 3E1.1, which provides for a reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). Because the district court "is in a unique position to evaluate a defendant's acceptance of responsibility," the district court's determination "is entitled to great deference on review." USSG § 3E1.1, comment. (n.5). We therefore review for clear error the district court's factual determination that a defendant has not accepted responsibility. *United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012).

Soulliere received a 2-level enhancement for obstruction of justice under USSG § 3C1.1 because he absconded from pretrial supervision. "Conduct resulting in an enhancement under USSG § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1, comment. (n.4). "Only in an 'extraordinary' case may a defendant receive both an offense-level increase for obstruction and an offense-level decrease for acceptance of responsibility." *United States v. Thomas*, 933 F.3d 605, 612 (6th Cir. 2019). Soulliere contends that his case is an extraordinary one warranting both adjustments.

"The 'extraordinary' case typically contains a common sequence: A defendant interferes early on with the investigation (triggering the obstruction enhancement), but later confesses to this obstruction and cooperates going forward (triggering the acceptance-of-responsibility reduction)." *Id*. Soulliere's conduct did not follow that sequence. Following his guilty plea, Soulliere failed to

report for drug testing and then tested positive for methamphetamine, which he denied using. The district court consequently ordered Soulliere to reside at a halfway house pending sentencing. At the halfway house, Soulliere committed 34 program violations in less than a month. Soulliere then failed to return to the halfway house after a medical appointment and absconded from pretrial supervision. When he was arrested nearly a month later, Soulliere lied about his identity, challenged the validity of the warrant for his arrest, and had in his possession another person's identification. Soulliere contends that, after he absconded from supervision, he offered to provide the government with information about other cases; the government declined his offer because his credibility was "totally shot" at that point. Soulliere's post-plea conduct was inconsistent with acceptance of responsibility—as the district court stated, the issue was "not even close." *See United States v. Sanders*, 501 F. App'x 455, 458 (6th Cir. 2012).

***Substantial Financial Hardship:*** Soulliere next argues that the district court erred in applying a 2-level enhancement for an offense resulting in substantial financial hardship to one or more victims under USSG § 2B1.1(b)(2)(A)(iii). We review for clear error the district court's factual finding that a victim suffered substantial financial hardship. *United States v. Johnson*, 830 F. App'x 153, 161 (6th Cir. 2020).

The enhancement for substantial financial hardship "focuses on the 'extent of the harm' to a particular victim and requires a showing that the loss was 'more than minimal or trivial' as gauged by the victim's specific financial circumstances." *United States v. Skouteris*, 51 F.4th 658, 672 (6th Cir. 2022) (internal citations omitted). In determining whether the enhancement applies, the district court "may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record." *United States v. Howder*, 748 F. App'x 637, 644 (6th Cir. 2018).

The commentary to USSG § 2B1.1 provides a non-exhaustive list of factors to assist the district court in determining whether the offense resulted in substantial financial hardship to a victim, including whether the victim "suffer[ed] substantial harm to his or her ability to obtain credit." USSG § 2B1.1, comment. (n.4(F)(vi)). According to the presentence report, one of the victims, M.F., reported that finding creditors for his business had been challenging as a result of a 50-point drop in his credit score due to "constant" credit inquiries in his name, while another victim, B.P., had been unable to purchase a home on two occasions because of the damage to his credit score, which had dropped from 740 to 620 due to fraudulent purchases and credit inquiries in his name. Soulliere did not present any evidence calling "the reliability or correctness of the[se] alleged facts into question." *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (quoting *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015)), *cert. denied*, 142 S. Ct. 191 (2021). The district court did not clearly err in determining that the damage to the victims' credit warranted application of the enhancement for substantial financial hardship.

*Mitigating Role:* Soulliere argues that the district court erred in denying him a mitigating-role reduction under USSG § 3B1.2, which "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2, comment. (n.3(A)). USSG § 3B1.2 authorizes a 4-level reduction for a "minimal participant," a defendant who is "plainly among the least culpable of those involved in the conduct of a group," *id*. comment. (n.4); a 2-level reduction for a "minor participant," a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal," *id*. comment. (n.5); and a 3-level reduction for a defendant whose role falls somewhere in between. The decision to grant a mitigating-role reduction "is based on the totality of the circumstances and involves a

- 7 -

determination that is heavily dependent upon the facts of the particular case." *Id*. comment. (n.3(C)). We therefore review the denial of a mitigating-role reduction for clear error. *United States v. Randolph*, 794 F.3d 602, 616 (6th Cir. 2015).

The district court did not clearly err in determining that Soulliere was "an average participant" and therefore not entitled to a mitigating-role reduction. The district court pointed out that "[t]hat these offenses don't occur without" Soulliere. Although "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative," such a defendant must be "substantially less culpable than the average participant in the criminal activity" to receive a mitigating-role reduction. USSG § 3B1.2, comment. (n.3(C)). Given that Soulliere had access to the PII of third parties by virtue of his employment with the SBA, Soulliere provided Vodak with that PII, they discussed splitting the proceeds from the use of M.F.'s PII, and Soulliere himself attempted to use B.P.'s PII to obtain benefits from the Michigan Department of Health and Human Services, Soulliere was not "substantially less culpable than the average participant" in this two-person conspiracy.

For these reasons, we **AFFIRM** Soulliere's sentence.